In the Matter of LOOMIS J. GROSSMAN, JR., et al., Appellants, v HERKIMER COUNTY INDUSTRIAL DEVELOPMENT AGENCY et al., Respondents.

Fourth Department, December 16, 1977

[redacted]

---

[redacted]

---

**APPEARANCES OF COUNSEL**

*Basloe, Basloe & Gallagher (Irving M. Basloe* of counsel), for appellants.

*Hughes, Groben, Liddy, Cardamone & Gilroy (Michael H. Stephens* of counsel), for Herkimer County Industrial Development Agency and another, respondents.

*Evans, Severn, Bankert & Peet (Philip A. Rayhill* and *Thomas F. O'Donnell* of counsel), for B.P.M. Gordon and Co., respondent.

**OPINION OF THE COURT**

MOULE, J.

This appeal raises questions concerning the purposes and powers of the Herkimer County Industrial Development Agency under title 1 of article 18-A of the General Municipal

Law, known as the New York State Industrial Development Agency Act.

Respondent Herkimer County Industrial Development Agency (HCIDA) entered into a written agreement, dated February 4, 1977, with respondent B.P.M. Gordon and Co. (Gordon), a commercial developer. Under this agreement Gordon was granted, in consideration of $1, an exclusive option to purchase HCIDA-owned real estate in the Village of Herkimer known as the Standard Desk Company property. The agreement provided that the purchase price for the realty was to be $100,000; that the option was to be exercised by June 1, 1977; that the closing would take place within 90 days of the exercise of the option; that Gordon would start construction of a mercantile building of at least 55,000 square feet on the property within 18 months of the closing of title; that HCIDA would be responsible for clearing the land of all structures then standing on the premises[1] prior to the closing of title; that in the event HCIDA did not do so, Gordon could remove them, in which case the purchase price for the realty would be reduced to $1 and all demolition costs incurred in excess of $100,000 would be returned to Gordon by a yearly tax reduction program pursuant to section 485-b of the Real Property Tax Law.[2] The contract also provided for the remuneration of respondent Edwin R. Catroppa, the real estate broker who had arranged for the option agreement.

Petitioners are real estate developers and owners of property located within the Village of Herkimer, who by service of an order to show cause and supporting petition, commenced this proceeding under CPLR article 78, on May 17, 1977, seeking a judgment canceling or rescinding the option agreement and any further contracts between respondents in relation thereto as being arbitrary, capricious, without authority and contrary to law. The show cause order contained a stay restraining performance under the option agreement or other related contracts pending a determination of the proceeding.

In response, HCIDA acknowledged that the $100,000 purchase price for the Standard Desk Company property was to be applied towards the cost of demolition of the structures

---

1. The cost of demolishing the buildings formerly occupied by the Standard Desk Company was estimated to exceed $400,000.

2. That section provides a partial tax exemption for real property constructed for the purpose of commercial, business or industrial activity, which is phased out gradually over a period of 10 years.

existing on the premises, but asserted that the paramount consideration for entering into the option agreement was the development of this otherwise vacant property into a 55,000 square foot mercantile establishment, together with the attendant creation of more than 100 job opportunities. HCIDA admitted that it had no authority to grant tax abatements, alleging that it was the intention of the parties to the option agreement that HCIDA use its best efforts to assist Gordon to achieve tax abatements as permitted by law. Gordon asserted that it was willing to purchase the Standard Desk Company property without any guarantees concerning a tax abatement.

Special Term dismissed the petition on the merits, holding that the option agreement was within the powers vested in the agency, and vacated the restraining order which had prevented exercise of the option. Thereafter, Gordon exercised its option under the agreement and title to the subject property was conveyed by HCIDA to Gordon. It is from the judgment dismissing their petition and vacating the stay that petitioners appeal.

The first contention raised on this appeal is that the option agreement and sale of the Standard Desk Company property are invalid because HCIDA exceeded its purposes and powers as established by article 18-A[3] of the General Municipal Law and limited by the Herkimer County Legislature.

HCIDA is governed by title 1 of article 18-A of the General Municipal Law. Under section 852 of that law the Legislature declared it to be the policy of the State "to promote the economic welfare, recreation opportunities and prosperity of its inhabitants and to actively promote, attract, encourage and develop recreation and economically sound commerce and industry through governmental action for the purpose of preventing unemployment and economic deterioration by the creation of industrial development agencies * * * and to grant to such industrial development agencies the rights and powers provided in this article."

The purposes of industrial development agencies are set forth under section 858 of the General Municipal Law which provides, in relevant part: "The purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equip-

---

**3.** This article comprises the New York State Industrial Development Agency Act, as amended (General Municipal Law [art 18-A, tit 1], § 850 *et seq.)* and the special acts creating municipal development agencies thereunder (tit 2, § 890 *et seq).*

ping and furnishing industrial, manufacturing, warehousing, commercial, research and winter recreation facilities including industrial pollution control facilities and thereby advance the job opportunities, health, general prosperity and economic welfare of the people of the state of New York and to improve their recreation opportunities, prosperity and standard of living".

Additionally, section 856 (subd 1, par [a]) of the General Municipal Law requires that: "Upon the establishment of an industrial development agency by special act of the legislature, the governing body of the municipality for whose benefit such agency is established shall file within six months after the effective date of the special act of the legislature establishing such agency * * * in the office of the secretary of state, a certificate setting forth: (1) the date of passage of the special act establishing the agency; (2) the name of the agency; (3) the names of the members and their terms of office, specifying which member is the chairman; and (4) facts establishing the need for the establishment of an agency in such municipality."

A special act[4] of the Legislature, codified in section 898 of the General Municipal Law, states that HCIDA was established for the accomplishment of any or all of the purposes specified in title 1 of article 18-A; and that the organization of HCIDA, as well as its operations and activities, was to be governed by that article.

In compliance with the provisions of section 856 (subd 1, par [a]) of the General Municipal Law the Herkimer County Legislature filed a certificate of establishment with the Secretary of State on October 5, 1970, setting forth in addition to the other required information, the following facts establishing the need for HCIDA: "The area has continued since 1963 to lag behind other upstate areas in terms of employment. In 1964 and 1965 and 1966 the unemployment rate was the highest among upstate labor areas. This creates a need for more and better jobs, education, and training. Industrial development is essential if these needs are to be met. There is, therefore, a need for creating an agency to afford financial assistance to industries wishing to locate in Herkimer County in order that the County may remain competitive with other areas in the country. The establishment of a county agency

---

4. L 1970, ch 410, eff May 1, 1970.

designated to issue bonds offers the potential to compete nationally to attract firms."

Petitioners under their first contention urge that by filing this certificate of establishment, the Herkimer County Legislature limited the purposes for which HCIDA was established to only those expressed thereunder. They further assert that this certificate filed by the County Legislature shows that HCIDA was created to remedy the county's need for industrial development alone, and that, therefore, it was beyond HCIDA's purposes to pursue commercial development. Since an industrial development agency's powers are exercisable only in furtherance of its purposes, petitioners argue that the granting of the option agreement and sale of real property to Gordon, a commercial developer, were beyond HCIDA's powers and are, therefore, invalid.

██ ██ It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature and, where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used *(Patrolmen's Benevolent Assn. of City of N. Y. v City of New York,* 41 NY2d 205, 208). Absent ambiguity as to the statute's scope and application, courts may not resort to rules of construction in interpreting such enactments *(Matter of Patrolmen's Benevolent Assn. of City of Buffalo v City of Buffalo,* 50 AD2d 101; cf. *City of Buffalo v Lawley,* 6 AD2d 66, 68).

██ The special act by which HCIDA was created states in unqualified terms that the agency "is hereby established for the accomplishment of any or all of the purposes specified in title one of article eighteen-A." (General Municipal Law, § 898.) Section 858 enumerates those purposes, which include the construction of commercial facilities. The language is mandatory and unequivocal. Nowhere is expressed an intention to limit those broad purposes outlined in article 18-A by the subsequent filing of a certificate setting forth facts establishing the need for the establishment of the agency.[5] The

5. Indeed, the legislative history of title 1 of article 18-A reveals an intention that each industrial development agency have similar purposes: "The bill sets out uniform goals, purposes, and guidelines for the local industrial development agencies * * * The measure will obviate the need for lengthy and cumbersome legislation when a particular community asks the Legislature to authorize a new agency by special act" (NY Legis Ann, 1969, pp 571-572). To interpret the statute as permitting local governing bodies to limit the purposes of the municipal agencies would defeat this intent.

relevant statutory language being unambiguous, there is no need for additional judicial interpretation.

Petitioners under their first contention further urge that the option agreement and sale of the Standard Desk Company property are not in accord with the policy of article 18-A of the General Municipal Law and the purposes of HCIDA, irrespective of the certificate filed by the Herkimer County Legislature.

As set forth under article 18-A of the General Municipal Law, it is the policy of this State actively to promote, attract, encourage, and develop economically sound commerce (General Municipal Law, § 852). The purposes of HCIDA include promoting, developing, encouraging, and assisting in the acquisition, construction, reconstruction, improvement, maintenance, equipping and furnishing of commercial facilities, to advance job opportunities (General Municipal Law, § 858).

As the court at Special Term observed, the development plan negotiated by HCIDA provides for the replacement of an unproductive, unoccupied industrial building with a new mercantile building of considerable size, which would ultimately create about 100 jobs. This plan followed extensive but unsuccessful efforts by HCIDA to find a suitable utilization for the Standard Desk Company plant and property, which had been abandoned as a furniture manufacturing facility in 1976. Whether the granting of the option agreement and sale of property to Gordon accomplished the optimum utilization of the Standard Desk Company property, such activities were clearly within the scope of the statutory policy and HCIDA's purposes.

The second contention raised on this appeal is that the option agreement and sale are invalid because HCIDA exceeded its purposes and powers in granting them without public competitive bidding.

Title 1 of article 18-A of the General Municipal Law grants the following powers to HCIDA in furtherance of its purposes: "[t]o acquire by purchase, grant, lease, gift, condemnation, or otherwise and to use, real property or rights or easements therein necessary for its corporate purposes * * * and to sell, convey, mortgage, lease, pledge, exchange or otherwise dispose of any such property in such manner as the agency shall determine" (§ 858, subd [4]); to grant options to buy any project at such price as the agency may deem desirable (§ 858, subd [13]); and "[t]o do all things necessary or convenient to

carry out its purposes and exercise the powers expressly given in this title" (§ 858, subd [16]). Moreover, section 884 of the General Municipal Law specifically exempts industrial development agencies from the application of public bidding statutes with respect to the construction or reconstruction of projects[6] authorized by article 18-A.

Since the sale of the Standard Desk Company property is subject to the construction by Gordon of a mercantile building, suitable for commercial purposes, the granting of the option agreement and sale are encompassed by the exemption of section 884 of the General Municipal Law and no public bidding was required.

Petitioners also contend that the option agreement and sale of the real property should be canceled or rescinded because of indefiniteness and uncertainty of terms.

We need not pass on the sufficiency of petitioners' asserted grounds for rescission and cancellation, for the general rule is that only a party or privy to a contract may bring an action for such relief *(Kalnitzky v Golden,* 205 App Div 45; *Insurance Co. of Pennsylvania v Park & Pollard Co.,* 190 App Div 388, 393, affd 229 NY 631; 6 NY Jur, Cancellation of Instruments, § 7).

We have examined petitioners' remaining contention that the option agreement and sale are revocable and should be revoked in the public interest, and find it to be without merit.

The judgment dismissing the petition and vacating the stay of performance should be affirmed.

MARSH, P. J., DILLON and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.

---

6. "Project" is defined as "any land, any building or other improvement, and all real and personal properties located within the state of New York * * * including, but not limited to, machinery, equipment and other facilities deemed necessary or desirable in connection therewith, or incidental thereto, whether or not now in existence or under construction, which shall be suitable for manufacturing, warehousing, research, commercial or industrial purposes" (§ 854, subd [4]).