OPINION OF THE COURT
David O. Boehm, J.
The issue presented on this motion for summary judgment is whether purchases of tangible personal property made for the purpose of installing or using such property upon or within *145 projects financed by industrial development bonds (IDEs) are exempt" from sales or use tax.
Plaintiff, Wegmans Food Markets, Inc. (Wegmans), operates a chain of stores in Central and Western New York State which sell food, groceries and other merchandise at retail, and maintains various transportation, storage and production facilities which service its chain of stores.
Since 1976 Wegmans has constructed 11 stores and support facilities, each of which was financed in whole or in part by the issuance of IDEs. In addition, Wegmans plans future projects having an aggregate cost of $30,000,000, and it is contemplated that substantially all of such costs will be financed by IDEs.
IDEs are issued by local Industrial Development Agencies (IDAs) established under the authority of article 18-A of the General Municipal Law. The proceeds of the bonds are used to finance the construction of projects such as the stores and production facilities operated by Wegmans. Typically, an IDE-financed project is constructed and owned by the IDA and leased under a financing lease to a business enterprise. The terms of the financing lease essentially provide for payments, which will amortize debt service on the bonds, and the business enterprise has the option to eventually purchase the project.
At least with respect to Wegmans’ projects, a requirement of IDE financing has been that all equipment purchased for the projects becomes the property of the IDA, regardless of whether such equipment is purchased with bond proceeds, or in the case of cost overruns, purchased with Wegmans’ own funds. All purchases of equipment for the 11 Wegmans’ projects financed with IDEs were made in the name of the IDA, with Wegmans acting as the agent for such purchases. The assets comprising each project are security for the bonds issued for that project regardless of the source of payment, and bond purchasers hold a security interest in all the assets, title to which is held in the name of the IDA.
The defendant, Department of Taxation and Finance of the State of New York (Department), examined Wegmans’ records pertaining to the first five projects which had been financed by the issuance of IDEs, and thereafter issued notices of determination and demands for payment of sales taxes owing for the period of December 1,1977 through November 30,1980. These notices, which were dated December 8, 1982, February 10, 1983 and June 17, 1983, indicated in part that Wegmans owed a total of $366,334.29 in sales tax on equipment used in connection with these five projects. The sales tax was based solely on the pur *146 chase price of equipment. The Department has not as yet examined the records pertaining to the six other IDB-financed projects operated by Wegmans.
There is some dispute between the parties as to the method by which the sales tax was calculated. According to an affidavit of James J. Morris, Jr., senior attorney for the Department, “the Department found that the proceeds from IDA bonds were not sufficient to cover the total cost of [Wegmans’] land and building acquisitions for the subject projects. Consequently, the Department assessed [Wegmans] for sales tax on its purchase of tangible personal property which exceeded the capital acquisition costs financed from bond proceeds.” Wegmans, however, contends that the Department treated as taxable those items of tangible personal property (other than production machinery and equipment, which is exempt from sales tax under section 1115 [subd (a), par (12)] of the Tax Law) which were purchased for use in these projects, regardless of whether such items of property had been purchased with bond proceeds or other funds. A comparison of each project’s cost in excess of the bond proceeds with the amount of the sales tax assessed supports Wegmans’ contention.
For instance, as set forth in an affidavit by Paul S. Speranza, Jr., secretary and general counsel for Wegmans, the Auburn Supermarket cost $5,000 more than the amount of the IDEs used to finance that project, but the amount of sales tax determined by Department auditors was $29,644.41, which at the applicable sales tax rate, infers gross taxable purchases of $423,485, which is well in excess of the amount not financed by IDEs.
On November 2, 1977, five years before the Department issued the notices of determination, the then Commissioner of Taxation, James Tully, issued a private ruling in letter form addressed to the New York City Industrial Development Agency which interpreted various sections of the New York State sales tax law and General Municipal Law. In that ruling the Commissioner concluded that the amount of lease rentals which constitute receipts from the rental of machinery and equipment by an IDA are not exempt from sales tax. This conclusion was based upon the opinion that the leasing of machinery and equipment by an IDA constitutes the sale of property of a kind ordinarily sold by private persons, and therefore such rental payments were not exempt from sales tax by virtue of section 1116 (subd [a], par [1]) of the Tax Law. The Commissioner viewed this as not in conflict with the tax exemptions provided for under *147 section 874 of the General Municipal Law because the sales tax would not be a tax on the IDA but upon the occupant of the project.
Wegmans contends that this ruling, which has been applied to its projects, is erroneous for two reasons: first, because ID As are not engaged in activities which are of the same kind as those conducted by private parties, therefore making the exemption under section 1116 (subd [a], par [1]) of the Tax Law applicable; and, second, because section 874 of the General Municipal Law overrides the sales tax provisions of the Tax Law. Furthermore, Wegmans argues the Sales Tax Bureau is in violation of the law because it has not published proposed or final regulations on the subject, as required by the New York Constitution, the Executive Law and the New York State Administrative Procedure Act.
Wegmans has attempted, without success, to obtain written clarification of the Department’s position on the application of sales and use taxes to IDA equipment purchases. In April, 1981, and again in October of that year, a Wegmans representative organized meetings with representatives of the Department. At both meetings Wegmans was told that the Department would issue a statement on its position. To date, no such statement has been forthcoming.
On December 1, 1983, Wegmans commenced this action for a declaratory judgment seeking a determination that no sales or use tax is payable with respect to purchases of tangible personal property made by either an IDA or Wegmans for installation or use upon or within IDB-financed projects; that no such taxes are payable by reason of payments made by Wegmans under any lease, installment sale, or loan agreement for the purpose of amortizing the indebtedness of an IDA for bonds issued by it; and, that no such taxes are payable, regardless of whether the IDB is tax exempt under the Internal Revenue Code, and regardless of whether the personal property retains its identity or becomes part of the real property. Wegmans now moves for summary judgment.
The Department agrees that the exemption from State taxes of a governmental agency would ordinarily apply to an IDA. However, it calls attention to section 1116 of the Tax Law, which delineates those organizations exempt from the payment of sales taxes. By section 1116 (subd [a], par [1]) of the Tax Law, the State of New York, or any of its agencies, instrumentalities, public corporations or political subdivisions obtains an exemption, but only where it is the purchaser, user or consumer, “or *148 where it is a vendor of services or property of a kind not ordinarily sold by private persons”.
The Department also concedes that by section 888 \ of the General Municipal Law inconsistent provisions in other acts are superseded and that the provisions of article 18-A of the General Municipal Law control. However, it contends that Wegmans has failed in its burden of showing that the Legislature intended the exemptions in article 18-A to supersede the sales tax law. There is nothing in the statute which specifically so provides, which it would if this were the legislative intent. Therefore, the Department argues, since the IDAs are vending services of property of a kind ordinarily sold by private persons, Wegmans, as an occupant of their projects, is obligated for all sales taxes upon the personal property purchased for such projects.
. However, there is strong authority to the contrary. The State Comptroller has concluded that section 874 of the General Municipal Law (which provides for the tax exemptions) read in conjunction in subdivision (4) of section 858 (which empowers IDAs to engage in various transactions regarding real property) and section 888 (providing that article 18-A controls with respect to inconsistencies in other laws) indicates an intention to exempt IDAs from the mortgage recording tax (1982 Opns St Comp No. 82-188, p 240). There is no reason why such intention would not apply to sales taxes as well.
Article 18-A resonates throughout with the purposeful design of establishing tax exemptions upon property owned by IDAs as well as upon property it “controls” or “supervises” and upon “its activities”. The beneficial purpose of the legislation and the legislative intent are clearly set forth in section 852 of the General Municipal Law which states:
“It is hereby declared to be the policy of this state to promote the economic welfare, recreation opportunities and prosperity of its inhabitants and to actively promote, attract, encourage and develop recreation, economically sound commerce and industry and economically sound projects * * * for the purpose of preventing unemployment and economic deterioration by the creation of industrial development agencies which are hereby declared to be governmental agencies and instrumentalities and to grant to such industrial development agencies the rights and powers provided in this article * * *
“The use of all such rights and powers is a public purpose essential to the public interest, and for which public funds may be expended” (emphasis added).
*149 Although the clarity of the foregoing language leaves little if any doubt as to the goals desired by the Legislature, any possible ambiguity is eliminated by section 858 of the General Municipal Law, which delineates the purposes and powers of an IDA: “The purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research and recreational facilities * * * and thereby advance the job opportunities, health, general prosperity and economic welfare of the people of the state of New York and to improve their recreation opportunities, prosperity and standard of living” (emphasis added).
To guarantee that IDAs shall in all respect be treated as a governmental agency, subdivision 2 of section 856 of the General Municipal Law, defines IDA as a “corporate governmental agency, constituting a public benefit corporation.”
Subdivision (1) of section 874 of the General Municipal Law goes on to provide that the creation of IDAs and the carrying out of their corporate purposes are “for the benefit of the people of the state of New York”, that they perform a “public purpose”, and that they “shall be regarded as performing a governmental function in the exercise of the powers conferred * * * and shall be required to pay no taxes or assessments upon any of the properties] acquired by [them] or under [their] jurisdiction or control or supervision or upon [their] activities.”
To accomplish the foregoing purposes, subdivision (2) of section 874 of the General Municipal Law exempts IDAs from all taxes, except transfer and estate taxes. Such exemption extends not only to the bonds and notes issued by IDAs, together with the income from them, but to the property of the IDAs as well.
The Legislature very carefully included all revenues received by an IDA within the purposes of article 18-A. The definition of “revenues” in subdivision (7) of section 854 of the General Municipal Law is all inclusive: “All rents, revenues, fees, charges and other sources of income derived by the agency from the leasing, sale or other disposition of a project or projects.”
The term “projects” was also made all-embracing. Subdivision (4) of section 854 of the General Municipal Law defines “Projects]” as “any land, any building[s] or other improvement, and all real and personal properties located within the state of New York * * * including, but not limited to, machinery, equipment and other facilities deemed necessary or desirable in connection therewith, or incidental thereto * * * which shall be suitable for *150 manufacturing, warehousing, research, commercial or industrial purposes”.
It is clear, therefore, that it was never the intention to exclude personal property from the tax exemption. The legislative reason is apparent. Such property is as much a part of a project developed by IDA as real estate or buildings.
There is another argument supporting tax exemption. Since IDAs are “governmental agencies” created for a “public purpose”, they would not ordinarily be subject to taxes upon any of their property, real or personal, except as otherwise specifically required by law. It would therefore seem unnecessary to itemize, as section 854 does, the property declared to be exempt from taxation. Nevertheless, the Legislature went to great pains to spell out the categories of property to be included within IDAs’ intended activities. Clearly, the purpose was to emphasize that such property was to be included within the tax exemption provided by the statute so long as the IDA owned, controlled or supervised it in connection with its activities, including the equipping and furnishing of a project. Indeed, the statute so provides in subdivision (10) of section 858 of the General Municipal Law, which empowers an IDA “[t]o acquire, construct, reconstruct, lease, improve, maintain, equip or furnish one or more projects” (emphasis added).
The Department’s argument is that although IDAs may be exempt from the payment of sales taxes, occupants of its projects, such as Wegmans, are not. However, since it is undisputed that the IDAs here continue to own the personal property and that such personal property is an integral part of the projects occupied by Wegmans, the Department has failed to show that the acquiring and leasing of such personal property is not essential to the IDAs’ activities and therefore taxable to Wegmans.
Although not on all fours, the case of Lincoln First Bank v Spaulding Bakeries (117 Misc 2d 892) is germane. There the Broome County Industrial Development Agency leased improved realty to Spaulding Bakeries and entered into an executory contract for its sale for a nominal consideration. It mortgaged the realty for an obligation which Spaulding was to pay. The court held the property to be immune from foreclosure of mechanics’ liens, stating: “The court recognizes that in other circumstances the type of leasing arranged here may be deemed nothing more than a secured sale of the premises to the ‘lessee’ * * * However, to ignore the ownership interests of the industrial development agency, as slight as they may be in light of the *151 inundation of private, equitable interests in this realty, would affect the salutary purposes of the New York State Industrial Development Agency Act (General Municipal Law, art 18-A). Ownership, as nominal as it seems, of such property by an industrial development agency, yields many benefits to the private lessee, including, for example, exemption of the land from real property taxes * * * We are not convinced that the immunity of public lands from foreclosure of mechanics’ liens should be now encroached to the detriment of the private user of those lands under the Industrial Development Agency Act” (p 898).
The language of the Court of Appeals in Bush Term. Co. v City of New York (282 NY 306) is also instructive. New York had, together with New Jersey, established a Port Authority compact. The Authority was empowered to construct terminals containing storage space and space for other facilities. The question arose as to whether the Inland Terminal Building constructed by the Port Authority, which included that use of the upper floors for office and manufacturing purposes, was tax exempt. It was noted by the Court of Appeals that the statute did not in express terms confer tax exemption. However, its language indicated an assumption by the Legislature that the building would be exempt from taxation. The court then stated: “Though ordinarily only clear and unequivocal language can create a special exemption from a general tax, yet property of a State or an agency of a State, held for a public purpose, is ordinarily not subject to a tax, and a tax imposed by a statute, though general in terms, will not be held to apply to such property. ‘The property held by the State, or by any of its municipal divisions, for public purposes, is not, and never has been subject, to taxation * * * It is never supposed to be included in the terms of any law providing for the imposition of taxes, however general it may be, not because it is exempt, in the sense in which that term is generally understood, but for the reason that in the nature of things it never was and never can be taxable’ ” (pp 318-319).
And, in Matter of Erie County Ind. Dev. Agency v Roberts (94 AD2d 532, 535, affd 63 NY2d 810), the Fourth Department stated, although admittedly as dictum: “Projects financed by an IDB are * * * exempt from State and local sales taxes (General Municipal Law, § 874) and from local property taxes so long as the agency holds title (Real Property Tax Law, § 412-a).”
Although construction of the tax statute by the Department is entitled to great weight (Matter of Telmar Communications Corp. v Procaccino, 48 AD2d 189), “where the statutory lan *152 guage is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Matter of Grossman v Herkimer County Ind. Dev. Agency, 60 AD2d 172, 178).
Furthermore, as stated by the Court of Appeals: “Where ? * * the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision,' it should not be accorded any weight.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459.)
Since the question presented is one of “pure statutory reading and analysis”, the customary rule of deference is not applicable.
Additionally, logic and common sense would compel the extension of the sales tax exemption to a project occupant such as Wegmans. Any sales tax would become part of the cost of establishing and maintaining a project and, necessarily, the amount an occupant would be obliged to pay to occupy a project would become increased accordingly. The financing arrangement would now have to include sales tax in the total of the debt payments. The Department has not attempted to explain why the Legislature, in its effort to achieve a healthy business climate for New York, would have insulated the sales tax when its actual focus of protection was business and employment. In addition, it would be difficult to justify an income tax exemption for moneys received by IDB holders, exempt not only from State tax but from Federal income tax (Internal Revenue Code [of 1954] [US Code, tit 26, § 103, subd (b)]) as well, which included, as a part thereof, the amount necessitated by a sales tax levy.
Although the Official Compilation of Codes, Rules and Regulations of the State of New York recognizes that an IDA is exempt from the payment of sales taxes in the purchase of tangible personal property (20 NYCRR 529.2), the Department’s position is that when the same IDA leases the property of a project to an occupant, that occupant must pay sales taxes on that portion of the lease applicable to the same personal property, or else, as in this case, pay sales tax on the purchase price of such personal property. But the IDA is not the intended beneficiary; it is only a conduit. The ultimate beneficiary is the people of New York who benefit by the fostering and growth of business, a goal which would be hindered and made economically burdensome by the imposition of sales taxes upon the *153 occupant for whom the benefits of the legislatively created funding agencies were directly intended.
For the same reason, the Department’s view that ID As are engaged in the sale or leasing of property of a kind ordinarily sold by private persons is erroneous. The transaction with an IDA is unique. It is unlike a transaction with a private party, if for no other reason that a private financing institution or lessor is unable to give the same kind of favorable tax treatment to a potential manufacturing or commercial occupier of a project which an IDA offers. IDA makes available funds which might not otherwise’ be obtained if financing were attempted through the private sector. Subject to negotiated agreements for payments in lieu of taxes, the occupier of a project is exempt from the payment of real estate taxes. In addition, there are specific qualifications and restrictions for IDA financing (General Municipal Law, § 862), restrictions not otherwise generally found with private financing arrangements. Furthermore, the tax exemptions allow the bonds to be marketed well below prevailing interest rates.
Although resort to statutory rules of construction is not necessary in view of the plain language of the statute, even they support Wegmans’ position. It is settled that all taxing statutes of doubtful meaning are “to be construed in favor of the taxpayer and against the taxing authority, and the burdens they impose are not to be extended by implication.” (Matter of American Cyanamid & Chem. Corp. v Joseph, 308 NY 259, 263.) When ambiguous or doubtful, the Tax Law is to be construed strongly in favor of the taxpayer and against the taxing power (Quotron Systems v Gallman, 39 NY2d 428, 431).
In addition, section 874 of the General Municipal Law excludes only transfer and estate taxes from the broad exemption it provides. Therefore, under the maxim of expressio unius est exclusio alterius, it may be assumed that what was omitted was intended to be excluded (see Matter of Kroll v Clausen, 74 NYS2d 21, affd 272 App Div 1005, affd 297 NY 698; see, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 240). And since article 18-A of the General Municipal Law (1969) was enacted after article 28 of the Tax Law (1965), which established sales and use taxes, as a more recently enacted statute it would supersede any inconsistent earlier statute (Abate v Mundt, 25 NY2d 309, 318; Erie County Water Auth. v Kramer, 4 AD2d 545, 550, affd 5 NY2d 954).
Lastly, construing the statute with reference to the objective sought to be obtained and the general spirit and purpose of its *154 enactment, the construction of article 18-A requires that it be given a meaning which serves that purpose (see Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818; Lincoln First Bank v Rupert, 60 AD2d 193; see, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 96). Such a construction is strengthened by section 888 of article 18-A which in plain language declares, without qualification, that inconsistent provisions in other acts are superseded.
In view of the foregoing, Wegmans’ motion for summary judgment must be granted. This disposition makes it unnecessary to take up Wegmans’ other point that the letter of the Commissioner was a declaratory ruling rather than, as claimed by the Department, only a “letter”. However, the Department’s position that its assessment of sales taxes and the policy behind its audits and assessments are based upon the Tax Law rather than upon the Commissioner’s letter of interpretation is difficult to accept. Such assessments and audits obviously require an interpretation of the Tax Law which has State-wide application and consequences. If this were not the case, it would not have been necessary for the Department to draft and compile the 28 pages in 20 NYCRR part 529, which deal with exempt organizations and which set forth in great detail the instances when an organization is exempt from payment of sales tax and the nature of the activities required for it to be eligible for exemption. Without question, the interpretation of the Tax Law, whether by the Commissioner or by the Commission, establishes rules of general applicability that implement or apply the law (see Executive Law, § 101-a, subd 1, par [b]; State Administrative Procedure Act, § 102, subd 2, par [a]).
The fact that such an interpretation is framed within a letter is not dispositive. As stated by the Court of Appeals in People v Cull (10 NY2d 123, 126), “[t]he term ‘rule or regulation’ has not, it is true, been the subject of precise definition, but there can be little doubt that, as employed in the constitutional provision, it embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future. The label or name employed is not important and, unquestionably, many so-called ‘orders’ come within the term.” (See, also, Dubendorf v New York State Educ. Dept., 97 Misc 2d 382, 394-395, mod 71 AD2d 837, opp dsmd 48 NY2d 829.)
Accordingly, there having been a failure to promulgate and file as required by the Constitution (art IV, § 8), the Executive Law (§ 102) and the State Administrative Procedure Act *155 (§ 201 et seq.), the Department’s “letter” may not be applied either to the ID As involved here or to Wegmans (Dubendorf v New York State Educ. Dept., supra).