OPINION OF THE COURT
John R. Tenney, J.
In 1980, William H. Griffith owned several parcels of commercial property located in Yorkville, New York. He financed this development through the Oneida County Industrial Development Authority (OCIDA).
*105 OCIDA regulations state that in such transactions the deed shall be placed in its name. The property was mortgaged to Banker’s Trust Company (the bank), to secure the $750,000 loan. OCIDA then leased the property back to Griffith for a rent which is exactly the same as the mortgage payments. The "rent” is paid directly to the bank.
In 1982, Griffith leased, with an option to buy, a portion of the premises, known as the "Red Barn” property, to plaintiff, AL-SAR Realty Corporation. Plaintiff sublet the Red Barn property to an affiliated company which opened a business under the assumed name of "Adult World”. AL-SAR has exercised its option to buy for $150,000. The bank has agreed to release the lien of its remaining mortgage against that parcel upon receipt of the $150,000. OCIDA refuses to issue a deed.
This action is against OCIDA and Griffith for (1) a declaration that the OCIDA deed is an equitable mortgage and (2) OCIDA be directed to execute the appropriate deed. Griffith consents and cross-claims against OCIDA alleging tortious interference with contract; interference with First Amendment rights; arbitrary and capricious action; and argues that OCIDA is indirectly attempting to "zone” the property to exclude adult book shops.
The applicable law is stated in Powell, Real Property (vol 3, | 447, at 37-131): "The deed absolute in form is transformed into a mortgage by a judicial finding that the parties intended it to operate as such. Such a finding is unavoidable if there is a separate instrument providing that the deed was executed as security for indebtedness. ”
The written documents demonstrate that OCIDA’s participation was to provide financing for the project, and that the essential purpose for executing the deed was to provide security for the financing. Although the courts have been liberal in permitting oral testimony to show an intent contrary to that in the documents (Corcillo v Martut, Inc., 58 AD2d 617; Mooney v Byrne, 163 NY 86) such testimony is not necessary here since OCIDA concedes the purpose of the transaction was to provide Griffith with financing and not to obtain ownership.
In Matter of Erie County Indus. Dev. Agency v Roberts (94 AD2d 532), the Fourth Department precisely analyzed the nature of IDA financing at pages 539 through 540. "The conveyance of legal title to the agency with the simultaneous lease back to the company is structured merely as a mecha *106 nism to facilitate financing and is not a genuine allocation of ownership in the agency * * * The agency has no formal interest in the venture * * * it assumes no risk of loss and has no opportunity to gain.”
OCIDA cautio.ns that if -the court finds that the deed is just a security procedure, it would jeopardize the tax-exempt status of all IDA projects and question the validity of the New York State Industrial Development Agency Act (General Municipal Law art 18-A).
OCIDA’s theory is that tax exemptions are only available if the agency is given record title to the project. In addressing ad valorem taxes and levies, General Municipal Law § 874 (1) states that there shall be "no taxes or assessments upon any of the property acquired by it or under its jurisdiction or control or supervision or upon its activities.” This section does not require IDA ownership.
■ There is no explicit requirement, either in the State statute or the Internal Revenue Code, that ownership of the property be vested in the IDA. Section 874 (2) of the General Municipal Law states: "Any bonds or notes issued pursuant to this title, together with the income therefrom, as well as the property of the agency, shall be exempt from taxation, except for transfer and estate taxes.” While article 18-A of the General Municipal Law contains certain restrictions on the ultimate beneficial use of bond issue proceeds, there is no indication that the Legislature intended the tax exemption to apply only if the agency took title to the project. The agencies are public benefit corporations (§ 856 [2]), and the tax-exempt nature of its bonds stems from the status, not from the ownership of the property for which benefit the bonds were issued.
The Federal statute (Internal Revenue Code § 103 [26 USC]), while substantially more complex, reaches the same result. Section 103 (a) states that interest on obligations of States and their political subdivisions are not includable in gross income. However, subdivision (b) provides that "industrial development bonds” are included in gross income unless they meet the specific exceptions set out in the later paragraphs of subdivision (b) (e.g. — bonds used to finance qualified residential rental property [§ 103 (b) (4) (A)]; bonds used to finance industrial parks [§ 103 (b) (5)]; small bond issues under $1,000,000 [§ 103(b)(6)]).
In determining tax-exempt status, the Internal Revenue Code focuses on the nature of the project, not on whether the *107 IDA has record title to the real property involved in the project. An "industrial development bond” both exempt and nonexempt is defined as
"any obligation * * *
"(A) * * * the proceeds of which are to be used directly or indirectly in any trade or business carried on by any person who is not [tax exempt] * * * and
"(B) the payment of the principal or interest on which * * * ■jg í í í
"(i) secured by any interest in property used * * * in a trade or business” (§ 103 [b] [2] [A], [B] [i] [emphasis supplied]).
The bonds in question here would qualify as IDE’s (and exempt under the small issue exception) even if the deed were declared an equitable mortgage since a mortgage is an "interest in property” which secures payment of the principal and interest.
This conclusion is bolstered by the examples set out in the Congressional Conference Committee Report (H R Rep No. 1533, 90th Cong, 2d Sess, at 32 [1968], to accompany H R 15414, adding § 103 [c] [now (b)] to 1954 Internal Revenue Code). In discussing the rules pertaining to the security interest test set forth in the definition of IDE’s, example (1) describes the typical IDA project as purchase by the agency and lease-back to the developer with rent equal to debt service. In example (2), the facts are changed in that the developer takes title to the property but contractually agrees to make annual payments equal to the bond debt service. Both arrangements provide the required Security interest and qualify as industrial development bonds.
An equitable mortgage meets these tests. OCIDA’s premise that retention of title is necessary to insure the tax-exempt status of the bonds and property has no statutory support. Defendant is entitled to summary judgment declaring that the deed is an equitable mortgage.
"Article 18-A resonates throughout with the purposeful design of establishing tax exemptions upon property owned by ID As as well as upon property it 'controls’ or 'supervises’ and upon 'its activities’.” (Wegmans Food Mkts. v Department of Taxation & Fin., 126 Misc 2d 144, 148, affd 115 AD2d 962 [emphasis supplied].) The purpose of the statute is to make funds available for industrial development. Certain controls are vested in the agency, mostly to secure the debt and continue the "tax exempt” status. There is provision for *108 accelerated payment. An attempt to decrease the indebtedness should be encouraged as part of the plan for development.
The refusal to execute a deed by OCIDA is arbitrary since the true owner and the "at risk” mortgagees are willing to go through with the partial sale and partial release of the security.
The bank has the power to take such action as appropriate under section 10.2 of the lease agreement. Under the circumstances, execution of a deed by OCIDA is merely ministerial, and there is no reason for its refusal. Although its refusal to act may have little practical effect, OCIDA should not, under these circumstances, be permitted to cloud the transaction.
’ Plaintiffs motion for summary judgment is granted consistent with this decision.