OPINION OF THE COURT
W. Patrick Fajlvey, J.
Petitioners have commenced this CPLR article 78 proceeding to challenge action taken by respondent Seneca County Industrial Development Agency (IDA) to provide the other remaining respondents[1] (Lago Resort & Casino, LLC) tax benefits for the casino Lago is building in Seneca County. Petitioners are seeking an order and judgment adjudging and decreeing that the IDA’s Lago resolution of December 10, 2015 (December 2015 resolution) authorizing a payment in lieu of tax agreement (PILOT) and lease between the IDA and Lago exceeds the IDA’s lawful authority and jurisdiction, was made in violation of lawful procedure, was affected by error of law, was arbitrary, capricious, and an abuse of discretion. Petitioners ask the court to determine that the resolution is unlawful, null, void, invalid and unenforceable and declare that all agreements based on or resulting from the December 2015 resolution, including the agent agreement, benefit recapture agreement, agency tax agreement, lease agreement and leaseback agreement are null, void and invalid.
Petitioners also seek an order and judgment adjudging and declaring that the Lago real property and any other casino property is not tax exempt, and ordering that the Lago property be returned to the taxable portion of any assessment and tax roll if it had been removed therefrom by reason of the December 2015 resolution or any agreements based thereon. In addition, petitioners ask the court to order and adjudge that the IDA is barred from taking any further action to enforce the IDA resolution or any resulting agreements on the ground that the action *739 to enforce the resolution and agreements based upon it exceeds the IDA’s authority and is contrary to law.[2]
Following respondents’ motion to dismiss the petition alleging petitioners lacked standing, the court entered an order dismissing the fifth and seventh causes of action and otherwise denied the motion.[3]
Petitioners’ remaining causes of action are:
1. Lago is not eligible for IDA assistance as a matter of law because there is no statutory authority for IDA financial assistance to casinos.
2. The IDA assistance is impermissible because IDA assistance is permissible only to induce development not otherwise to occur. Here, Lago planned the development without making a request to the IDA before it applied for a casino license. Lago’s license application boasted that financing was 100% secure. Thus, IDA assistance serves no purpose but to enrich a private party at public expense.
3. The December 2015 resolution failed to specify the amount of Lago’s real property tax abatement.
4. The IDA materially miscalculated and misstated the amount of public assistance received by Lago.
6. The IDA usurped the powers that rest solely with the Tyre Town Assessor to value improvements to the property.
First Cause of Action
Petitioners argue that the casino is not a project as defined in the New York State Industrial Development Agency Act (IDA Act) (General Municipal Law art 18-A) and therefore ineligible for IDA benefits. (See General Municipal Law § 854 [4].) Petitioners ask the court to find that the IDA’s determination that the casino is a project for which IDA benefits may be granted is not entitled to deference. Instead, petitioners ask this court to determine that a casino is not a project because *740 contrary to the findings of the IDA, a casino is neither an improvement for commercial purposes, nor a recreation facility. (General Municipal Law § 854 [4], [9].)
Respondents ask the court to deny this cause of action arguing that the casino is a project within the scope of General Municipal Law § 854 (4) in that the casino will promote employment opportunities, prevent economic deterioration and advance the general welfare and recreation opportunities of the people of Seneca County, and so is both a commercial project and a recreation facility under the IDA Act. Respondents ask the court to give deference to the IDA’s determination that the casino is a project.
Looking first at the question of whether the court must defer to the IDA’s determination that the casino is a “project” as both a commercial improvement and a recreation facility, the court concludes no deference is required.
“Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld. Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980] [citations omitted]).
Upon review of the case law regarding agency interpretation of provisions of the IDA Act, the court concludes that the IDA’s determinations regarding what is meant by “commercial” and “recreation facility” insofar as such an improvement is a “project” are not entitled to deference, but that this court should determine the statutory construction as a matter of law. (See Matter of Elmer W. Davis, Inc. v Commissioner of Taxation & Fin., 104 AD3d 50, 53 [3d Dept 2012] [where the court determined that the Tax Appeals Tribunal’s interpretation of General Municipal Law § 854 (4) was not entitled to deference] ; see also Wegmans Food Mkts. v Department of Taxation & Fin. of State of N.Y., 126 Misc 2d 144, 152 [Sup Ct, Monroe County 1984] [where the court, quoting Kurcsics (49 NY2d at *741 459), determined that the IDA Act provides for a sales or use tax exemption on personal property purchases made for purpose of installation in a property financed by industrial development bonds, noting deference to the interpretation of the respondent Tax Department is not required because the question presented is one of “pure statutory reading and analysis”], affd 115 AD2d 962 [4th Dept 1985],)[4]
Turning then to the issue of whether a casino may qualify as a “project” entitled to IDA benefits, the court must interpret the relevant statutes.
Petitioners argue that the General Municipal Law § 854 (4) definition of “project” and the General Municipal Law § 854 (9) definition of “recreation facility” are ambiguous, and so the court should use rules of construction in interpreting them, and would, upon use of such rules of construction, determine that a casino is not a project because it is neither a commercial improvement nor a recreation facility.
Petitioners contend that because when the IDA Act was first enacted casinos were prohibited in New York, and after casinos were allowed by amendment to the New York Constitution, the IDA Act was not amended to include casinos within the definition of a “project” entitled to IDA benefits, no such benefits may be granted to a casino. While the legislature has never added casinos to project types that can qualify for IDA assistance, the legislature has extended the scope of the IDA Act to include certain racing facilities. Initially, horse racing facilities were not included even though horse racing was legal in 1969 when the IDA Act was first enacted. It was in 1977, eight years after the IDA Act was originally enacted that “project” was expanded to include horse racing facilities. So, petitioners reason, by expressly adding horse racing facilities to the definition of “project,” the legislature made clear that such wagering facilities were not otherwise included in the definition of “project.”
Respondents urge the court to follow Matter of Patrolmen’s Benevolent Assn. of City of Buffalo v City of Buffalo (50 AD2d 101, 104 [4th Dept 1975] [holding that the statute at issue was “clear and precise in its directive”]). Respondents argue that *742 the casino meets the requirements of General Municipal Law § 858. Here, the IDA found that the project was both a commercial and recreation facility. Respondents cite Matter of Grossman v Herkimer County Indus. Dev. Agency (60 AD2d 172, 179 [4th Dept 1977]) which held that General Municipal Law § 858 with respect to the authority of agencies to promote commercial facilities is unambiguous.
Respondents assert that there is no doubt that the project qualifies as a commercial improvement or recreation facility, since it consists of hundreds, of thousands of square feet of gaming, lodging, spa, restaurant and parking space, will generate hundreds of millions of dollars in annual revenue and over a million dollars in annual sales and lodging taxes. Respondents urge the court to deny the first cause of action because petitioners are asking the court to restrict the plain meaning of the terms “commercial” and “recreation.”
A court interpreting a statute is charged with effectuating the intent of the legislature, and if the statutory language is unambiguous, the court should give effect to the plain meaning of the words used therein. (Matter of Grossman v Herkimer County Indus. Dev. Agency, 60 AD2d 172, 178 [4th Dept 1977].) Where unambiguous, the court does not resort to rules of construction in interpreting a statute’s scope and application. (Id.) “If, however, examination of the language leaves the statute’s purpose and intent uncertain, resort must be had to other available aids (see, McKinney’s Cons Law of NY, Book 1, Statutes § 76).” (Matter of American Communications Tech. v State of N.Y. Tax Appeals Trib., 185 AD2d 79, 82 [3d Dept 1993].)
The IDA Act does not define the term “commercial.” “Recreation facility” is defined as:
“any facility for the use of the general public as spectators or participants in recreation activities, including but not limited to skiing, golfing, swimming, tennis, ice skating or ice hockey facilities, together with all buildings, structures, machinery, equipment, facilities and appurtenances thereto which the agency may deem necessary, useful or desirable in connection with the construction, improvement or operation of any such facility, including overnight accommodations and other facilities incidental thereto and facilities that may permit the use of recreation facilities by the general *743 public as participants in recreation activities, but shall not include facilities for automobile or horse racing or other similar activities.” (General Municipal Law § 854 [9].)
Thus the court must determine whether the legislature intended that a casino such as that being built in the Town of Tyre be considered a commercial project and/or a recreation facility, entitled to IDA benefits. In making this determination, the court concludes that these terms are ambiguous insofar as the Lago casino is concerned, and so resort to rules of construction is appropriate.
It is paramount that “[a] statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 97.) The court considers the following provisions of the IDA Act in construing the act as a whole:
“It is hereby declared to be the policy of this state to promote the economic welfare, recreation opportunities and prosperity of its inhabitants and to actively promote, attract, encourage and develop recreation, economically sound commerce and industry . . . for the purpose of preventing unemployment and economic deterioration . . .
“It is hereby further declared to be the policy of this state to protect and promote the health of the inhabitants of this state and to increase trade through promoting the development of facilities to provide recreation for the citizens of the state and to attract tourists from other states.” (General Municipal Law § 852.)
“The purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing . . . commercial . . . and recreation facilities.” (General Municipal Law § 858.)
“It is hereby determined that the creation of the agency and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York and is a public purpose, and the agency shall be regarded as performing a governmental function in the exercise of the powers conferred upon it by this title and shall be required to pay no taxes or assessments upon any *744 of the property acquired by it or under its jurisdiction or control or supervision or upon its activities.” (General Municipal Law § 874 [1].)
“Insofar as the provisions of this title are inconsistent with the provisions of any other act, general or special, or of any local laws of the municipality, the provisions of this title shall be controlling except in cases of inconsistency with the Indian law.” (General Municipal Law § 888.)
Petitioners make much of the provisions in the IDA Act that at one time specifically omitted horse racing facilities from entitlement to IDA benefits, and then later specifically provided that horse racing facilities may be entitled to such benefits, arguing that certainly the legislature would amend the IDA Act to include a casino, if a casino was to be entitled to benefits, since a casino, like a horse racing facility, is a wagering facility. (See General Municipal Law § 854 [9], [10].)
Petitioners urge the court to determine that the aspect of horse racing that caused the legislature to exclude it from IDA benefits is that it is a wagering activity. However, petitioners have not pointed out any legislative history, legislative memoranda or executive memoranda that support their argument that the intent of the IDA Act was to exclude projects that involve any kind of wagering, unless specifically included. Similarly, petitioners have not pointed to any legislative history, memorandum or other documents supporting their conclusion that one of the four “destination resort casinos” provided for in article 13 of the Racing, Pari-Mutuel Wagering and Breeding Law may not be considered a “recreation facility” under General Municipal Law § 854 (9) simply because “facilities for automobile or horse racing or other similar activities” are not so included.
To the contrary, as outlined above, the various provisions of the IDA Act acting in concert are expansive in scope and designed to promote development in the state that will provide jobs, increase trade and increase tourism. As interpreted by the court in Wegmans Food Mkts. v Department of Taxation & Fin. of State of N.Y. (126 Misc 2d 144, 149 [Sup Ct, Monroe County 1984]), “[t]he term ‘projects’ was also made all-embracing.”
Here, Lago’s November 6, 2015 application for assistance attaches a description of the facility to include a 95,000-square-foot casino with
*745 “approximately 85 gaming tables and approximately 2,000 slot machines, plus an additional 75,000 square feet of support and back-of-house space, a six-story, approximately 153,000 square-foot hotel containing approximately 205 rooms, an approximate 12,500 square-foot state-of-the-art full-service spa, and approximately 2,500 square-feet of pool area, an assortment of restaurants totaling approximately 28,000 square-feet, approximately 40,000 square-foot event center, approximately 4,000 square-foot child care center, concierge service, [and] a parking garage.”
Lago’s application estimated 1,800 construction jobs, and 1,200 permanent jobs, and a project cost of $425,000,000.
The court finds that the Lago casino facility is a commercial project under the IDA Act. Similarly, this court also finds that the Lago casino facility is a recreation facility within the purview of General Municipal Law § 854 (9). The Lago project is a commercial project because it is a profit-making business that will create jobs and promote economic prosperity in the area in keeping with the purposes of the IDA Act. It is a recreation facility because it will provide recreational and leisure activities to its visitors.
The court thus concludes that the IDA’s determination to grant benefits to Lago was not made in violation of lawful procedure, affected by error of law, or arbitrary and capricious, or an abuse of discretion. (CPLR 7803 [3].) The first cause of action is therefore denied.
Second Cause of Action
Petitioners ask the court to find that there was no rational basis for the IDA to grant benefits to Lago, because Lago planned to build a casino in the Town of Tyre without such benefits. Petitioners argue the award of benefits was arbitrary and capricious, because the IDA’s findings lack any evidentiary support. Petitioners ask the court to decide that the IDA must find a need for benefits before granting them. (Matter of Barker Cent. School Dist. v Niagara County Indus. Dev. Agency, 62 AD3d 1239, 1241 [4th Dept 2009]; Matter of Central NY Coach Lines v Larocca, 120 AD2d 149, 152 [3d Dept 1986]; Matter of Pyramid Co. of Watertown v Tibbets, 76 NY2d 148, 151 [1990]; General Municipal Law § 852.)
Petitioners say the purpose of the IDA is to persuade an out of state industry to locate in the county and to prevent loss of *746 industry by providing incentives to these industries to stay in the county, and Lago is not such an industry. (See Matter of American Rock Salt Co. LLC v Commissioner of Taxation & Fin. of the State of N.Y., 104 AD3d 12, 14 [3d Dept 2012]; General Municipal Law §§ 858, 852.)
Respondents ask the court to dismiss this cause of action because the IDA Act does not require proof that a project will not proceed without IDA benefits, making petitioners’ allegations that the assistance was not required for Lago to construct the project legally irrevelant. Respondents assert there is no “but for” test for IDA review of applications. Instead, respondents argue, the IDA is charged only with determining what projects are worthy of IDA involvement, i.e., that the project will promote employment and prevent economic deterioration.
In reviewing a determination made by an administrative agency, where, as here, a determination was made which was not the result of an evidentiary hearing, the court is limited to considering “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.” (CPLR 7803 [3].) The IDA Act provides broad power to an individual IDA to provide benefits to projects it deems worthy, subject to the specific requirements of the act. There is no statutorily created oversight agency, no promulgated rules and regulations that must be followed by the IDA. Thus, the court must look to the statutory provisions to determine if the IDA overstepped its bounds in granting benefits to Lago.
“The purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research and recreation facilities . . . and to carry out the aforesaid purposes, each agency shall have the following powers: . . .
“[t]o make contracts and leases, and to execute all instruments necessary or convenient to or with any person, firm, partnership or corporation, either public or private; provided, however, that any extension of an existing contract, lease or other agreement entered into by an agency with respect to a project shall be guided by the provisions of this article.” (General Municipal Law § 858 [9].)
*747 When the IDA plans to provide financial assistance of more than $100,000, as is the case here,
“[t]he agency must adopt a resolution describing the project and the financial assistance that the agency is contemplating with respect to such project. Such assistance shall be consistent with the uniform tax exemption policy adopted by the agency pursuant to subdivision four of section eight hundred seventy-four of this chapter.” (General Municipal Law § 859-a [1].)
Here, the IDA adopted such a resolution and found that the project complied with its uniform tax exemption policy. (See General Municipal Law § 874 [4] [a].) Another requirement is a public hearing, which must' be noticed via publication at least 10 days before the hearing. (General Municipal Law § 859-a [2], [3].) The IDA complied with the notice requirement.
The IDA is restricted in its use of funds so that an IDA may not provide benefits to a project
“if the completion thereof would result in the removal of an industrial or manufacturing plant of the project occupant from one area of the state to another area of the state or in the abandonment of one or more plants or facilities of the project occupant located within the state.” (General Municipal Law § 862 [1].)
Here, the IDA made appropriate findings regarding this restriction in its November 2015 resolution.
As respondents observe, there are no requirements in the IDA Act that the IDA may only grant benefits to projects that would not be built in Seneca County unless IDA aid is given. On review of the documents and transcripts contained in the record herein, the court does not find that the IDA’s decision to grant aid to Lago was “a determination . . . made in violation of lawful procedure, . . . affected by an error of law or was arbitrary and capricious or an abuse of discretion.” (CPLR 7803 [3].) Therefore the second cause of action is denied.
Third Cause of Action
Petitioners claim that the IDA improperly failed to specify the amount of real property tax abatement Lago would be receiving in either its November 2015 inducement resolution or the December 2015 resolution granting benefits to Lago, in violation of General Municipal Law § 859-a (1), which requires *748 the IDA to describe “the project and the financial assistance that the agency is contemplating with respect to such project.”
The court notes that the November 2015 resolution lists the contemplated financial assistance as “a sales and use tax exemption for purchases and rentals related to the acquisition, construction and equipping of the Facility, ... a partial real property tax abatement structured within the Tax Agreement, and ... a mortgage recording tax exemption for financing related to the Project.” The court can find no statutory requirement in General Municipal Law § 859-a (1) or case law that would require the IDA to state the amount of the real property tax abatement contemplated. The third cause of action is therefore denied.
Fourth Cause of Action
Petitioners contend that the IDA materially miscalculated and misstated the amount of public assistance to Lago. They argue that in determining the benefits it would grant Lago the IDA used an unreasonably low tax rate for the three affected tax jurisdictions. Petitioners also claim that the IDA used an unreasonably low value for the casino of $102,700,000 which was based on the September 30, 2014 appraisal report prepared by Cushman & Wakefield, Inc. (Cushman appraisal), for the Town of Tyre, which appraisal petitioners assert is incoherent or obviously flawed. Petitioners argue the value should be based on the projected revenués, i.e., the income capitalization approach, not the cost approach, as used in the Cushman appraisal.
During the IDA process,' petitioners submitted evidence from courts, from an industry expert and even from Cushman & Wakefield’s own Hospitality and Gaming Practice Group (tr exhibit D at 192-206, 294-439) to point out to the IDA ways .to value the casino. But, Cushman’s appraiser failed to conduct the standard market analysis for a facility of this type, and so the appraisal is inherently unreliable, say petitioners. Petitioners also claim the Cushman appraisal contains mathematical errors.
Respondents assert that the IDA properly approved a tax agreement for an exemption from real property taxes and a schedule of payments extending over a period beginning with 2017-2018 school fiscal year and ending 2036-2037 school tax year. Respondents note the IDA received input from the Town Assessor, and elected officials at the Town of Tyre and Seneca *749 County, and that the Assessor advised the IDA that the $102,700,000 figure calculated by the Cushman appraisal was a reasonable projection for the “as completed assessed value” of the project. Respondents claim that the IDA incorporated assumed tax rates based upon input from local officials and estimates of economic impact of-the project, including payments to be made under the community mitigation plan between Lago and the Town of Tyre. Respondents contend that it is not appropriate or legally permissible for the court to substitute its judgment as to the value of the proposed exemptions and that the IDA properly calculated the payments under the tax agreement. The respondents argue that the IDA correctly considered the impact of the project on the tax base, the revenue demands of the taxing jurisdictions as a result of the project’s proposed operations. Respondents submit that the record reflects a rational evaluation process in approving the proposed payment schedule.
As for the Cushman appraisal, respondents contend that petitioners never submitted any contrary appraisal to the IDA that independently analyzed or opined as to the estimated assessed value of Lago, but only submitted a letter criticizing the report. Since the criticism was uncorroborated by any empirical data, respondents assert, the letter is insufficient to counter the Cushman appraisal.
Respondents advance there is a rational basis for IDA’s determination that its involvement in the project and the consequent tax abatement would further the IDA’s statutory mission to promote, develop, encourage and assist commercial enterprise. (General Municipal Law § 858.)
The petitioners have not convinced the court that the IDA violated any lawful procedure. (CPLR 7803 [3]; see General Municipal Law §§ 858 [15] [providing for requirements of PILOT agreements]; 859-a [regarding hearing requirements]; 862 [regarding restrictions on funds of the agency].) The IDA has complied with these statutory requirements in its determination to provide benefits to Lago. Further, the IDA considered the documents and data before it (including the Shepstone report’s estimate of a benefit to cost ratio for the project of 51.7:1 and the Cushman appraisal) to determine the benefits it would grant for the project. As respondents point out, the petitioners’ expert appraiser, Jonathon Jaeger, did not provide to the IDA an alternate certified appraisal of the project, but offered only an unverified critique of the Cushman appraisal, *750 which critique was submitted to the IDA as part of the public hearing. Thus, the IDA’s failure to adopt Jaeger’s critique in making its determination was not arbitrary and capricious, affected by error of law, or an abuse of discretion. The fourth cause of action is therefore denied.
Sixth Cause of Action
Petitioners claim that IDA unlawfully seized the Town Assessor’s authority to value improvements to the property in that section 1.2 of the agency tax agreement between the IDA and Lago improperly provides that if Lago makes future improvements to the real property the PILOT payments will increase according to “the value of the Future Addition as. determined by the IDA.” Petitioners argue that only assessors, not IDAs are granted authority to value improvements on real property. (RPTL 102 [3]; see also Matter of Barker Cent. School Dist. v Niagara County Indus. Dev. Agency, 62 AD3d 1239, 1240-1241 [4th Dept 2009].) Petitioners contend that it is impermissible for a PILOT agreement to authorize an IDA “to determine the assessed value of any future additions made to the [project].” (Barker at 1241.)
Respondents assert that the IDA did not impermissibly preempt the Assessor’s authority to value the future improvements, which are those improvements which were not originally contemplated as part of the project. Pursuant to General Municipal Law § 874 real property in which an IDA has an interest is exempt from ad valorem real property taxes, and so in accordance with the assistance approved by IDA the project is exempt from such taxes during the period of IDA’s involvement. Respondents contend that the tax agreement was contemplated as an agreement between the IDA and Lago to provide for payments from Lago to affected tax jurisdictions during the PILOT period. Respondents argue that a mechanism was required in the tax agreement to obtain increased payments in lieu of taxes from Lago based on the value of additional improvements and section 1.2 of the tax agreement was made a part of the agreement to do so. Respondents contend that section 1.2 does not provide for the IDA to value the additional improvements for purposes of establishing assessed valuation upon which to levy real property taxes, but it is solely to permit the IDA to value the additional improvements for purposes of the contractual arrangement between the IDA and Lago. Respondents assert that the payment *751 schedule as approved complies with the IDA’s uniform tax exemption policy. (See Counties of Warren & Washington Indus. Dev. Agency v Boychuck, 109 AD2d 1024 [3d Dept 1985].)
Although the language used in the agency tax agreement herein is very similar to that found invalid in Barker, the court concludes that the IDA’s determination to enter into the agreement was not a violation of lawful procedure, affected by error of law, arbitrary and capricious, or an abuse of discretion. (CPLR 7803 [3].) The agreement does not use the word “assessed” in section 1.2 concerning valuation of material future additions to the facility. The provision provides a mechanism for determining an increased payment in lieu of taxes if Lago builds a material addition to the facility, not contemplated at the time of the agreement, during the years that the agency tax agreement is in place. The powers and duties of the Town Assessor to assess the property are not affected by this provision of the PILOT agreement. (See agency tax agreement § 4.3; General Municipal Law § 874.) The sixth cause of action is also denied.
Order and Judgment
In accordance with the foregoing:
1. The petition is denied on the merits.
2. Any and all other relief requested by any party not specifically granted herein is in all respects denied.

. By stipulation of discontinuance filed March 4, 2016, the action was discontinued as against Seneca County, Town of Tyre, and Waterloo Central School District.

. To the extent petitioners seek a declaratory judgment, no such relief may be given, since the matters only involve the IDA’s administrative determinations. (Matter of Barker Cent. School Dist. v Niagara County Indus. Dev. Agency, 62 AD3d 1239, 1240 [4th Dept 2009].)

. The fifth cause of action was dismissed with prejudice. The seventh cause of action was dismissed without prejudice for petitioners to commence a separate suit following their successful appeal of a prior action. The court notes that given the Fourth Department’s ruling in Matter of Casino Free Tyre v Town Bd. of Town of Tyre (140 AD3d 1711 [4th Dept 2016]), it would appear that the seventh cause of action may not be revived in a new action.

. Unlike the case at bar, both Wegmans and Elmer W. Davis involved statutory interpretation of the IDA Act by agencies other than the involved IDA. However, the underlying ruling that agency interpretation of IDA Act provisions (as at issue herein) is not entitled to deference by the court still applies.