■ In the Matter of FAGLIARONE, GRIMALDI & ASSOCIATES,

Petitioner, v TAX APPEALS TRIBUNAL et al., Respondents.—
Yesawich, Jr., J. Proceeding pursuant to CPLR article 78
(initiated in this court pursuant to Tax Law § 2016) to review
a determination of respondent Tax Appeals Tribunal which
sustained a sales and use tax assessment imposed under Tax
Law articles 28 and 29.

Petitioner, a general partnership, challenges respondent
Tax Appeals Tribunal's determination that the partnership is
not entitled to a $3,787.63 refund of sales taxes paid for
certain utility and maintenance costs (see, Tax Law arts 28,
29). The taxes arise out of the operation of an office building
located at 650 James Street in the City of Syracuse, Onondaga
County. Previously, petitioner had arranged with the Syracuse
Industrial Development Agency (hereinafter SIDA) for issu-
ance of an industrial development bond (hereinafter IDB) to
cover the costs of renovating the property into modern com-
mercial office space. The parties executed a sale-leaseback
agreement whereby petitioner transferred title of the property
to SIDA, which in turn simultaneously leased the premises to
petitioner.

The point in question on this appeal is whether a private
developer of an IDB-financed project is exempt from paying
sales tax on expenses incurred to operate the property. Sales
taxes were paid by petitioner on maintenance and utility
services furnished by it to its subtenants, as well as on
cleaning and lavatory supplies and ice melting chemicals.

General Municipal Law § 874 (1) provides that an industrial
development agency "shall be required to pay no taxes or
assessments upon any of the property acquired by it or under
its jurisdiction or control or supervision or upon its activities".
While the statute explicitly confers this exemption only on the
industrial development agency, private developers who act as
the agency's agent for project purposes may also enjoy this tax
benefit (see, Wegmans Food Mkts. v Department of Taxation &
Fin., 126 Misc 2d 144, 150, affd on opn below 115 AD2d 962, lv
denied 67 NY2d 606). Here, however, the evidence respecting
whether petitioner was SIDA's agent for maintaining the
project is inconclusive. The lease agreement contains ambigu-
ous language regarding petitioner's status during various
stages of the project. On the one hand, SIDA "appoints [peti-
tioner] as its Agent to, and [petitioner] agrees that [petitioner]
shall bear the sole responsibility for, completion of the renova-
tion and development of the Facility [the building, personalty
and related property, constructed or installed on the leased
land]". On the other hand, two paragraphs later the agree-

ment states that, "It is understood that [petitioner] will act as an independent contractor, to, and not as an agent of, [SIDA] in connection with such completion of the renovation, construction, development and expansion of the Facility." Further blurring the situation is a "statement of tax exempt status" dated October 3, 1986, issued by SIDA, wherein it specifically declared that petitioner was its agent for the purpose of both developing and operating the project.

A guiding principle of tax law is that statutes creating a tax exemption are construed against the taxpayer *(Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 196). Exemptions must be clearly indicated as they will not be created by implication *(see, Matter of Great Lakes Dredge & Dock Co. v Department of Taxation & Fin.,* 39 NY2d 75, 79, *cert denied* 429 US 832). Irrespective of petitioner's status, the fact is that General Municipal Law § 874 (1) specifically exempts only the industrial development agency itself from paying taxes upon its "property" or its "activities". Significantly, in the matter at hand the lease limits SIDA's activities to "acquir[ing], construct[ing], equip[ping] and develop[ing]" the project. It is petitioner that is obligated, at its own expense, to repair and maintain the project, and pay all utility and other expenses experienced in operating, maintaining, using and occupying the project. Given that operating and maintaining the property were not SIDA activities nor, in our view, otherwise essential to the renovation project *(see, Wegmans Food Mkts. v Department of Taxation & Fin., supra,* at 150), the statutory exemption does not apply.

Moreover, petitioner's argument notwithstanding, requiring it to pay sales tax on its operating expenses would not alter the amount of financing necessary to develop the project. And, unlike the circumstances presented in *Wegmans Food Mkts. v Department of Taxation & Fin. (supra,* at 145, 152) where equipment purchased and installed in the projects became the property of the industrial development agency, here the purchases—the bulk of them being for utility services—by their very nature are such that they are incapable of becoming SIDA's tangible property.

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.