[931 NE2d 529, 905 NYS2d 545]

In the Matter of RICHARD E. GORDON et al., Appellants, v TOWN OF ESOPUS et al., Respondents. (And Three Other Related Proceedings.)

Argued May 5, 2010; decided June 15, 2010

## POINTS OF COUNSEL

*Van DeWater & Van DeWater, LLP,* Poughkeepsie (*David D. Hagstrom* of counsel), for appellants. I. The subject property should be valued according to its *existing use* as managed forest land on the applicable valuation and taxable status dates. (*Matter of General Motors Corp. Cent. Foundry Div. v Assessor of Town of Massena,* 146 AD2d 851, 74 NY2d 604; *Matter of Ross v Town of Santa Clara,* 266 AD2d 678; *Matter of Weingarten v Town of Ossining,* 85 AD2d 697; *Matter of Addis Co. v Srogi,* 79 AD2d 856, 53 NY2d 603; *Matter of PCK Dev. Co., LLC v Assessor of Town of Ulster,* 20 AD3d 660, 6 NY3d 708; *Matter of Adirondack Mtn. Reserve v Board of Assessors of Town of N. Hudson,* 99 AD2d 600; *Matter of General Elec. Co. v Macejka,* 117 AD2d 896; *Matter of Stillwell Equip. Corp. v Assessors for Town of Greenburgh,* 251 AD2d 672; *Matter of Clove Dev. Corp. v Frey,* 63 NY2d 181.) II. Legislative intent supports valuation according to existing use as RPTL 480-a forest land on the applicable valuation and taxable status dates. (*Matter of Clove Dev. Corp. v Frey,* 63 NY2d 181; *Matter of Honeoye Cent. School Dist. v Berle,* 72 AD2d 25, 51 NY2d 970; *People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350.) III. Donald Fisher's appraisal methodology and comparables were thorough, reliable and based on the property's current use. (*Matter of Honeoye Cent. School Dist. v Berle,* 72 AD2d 25, 51 NY2d 970; *Matter of Great Atl. & Pac. Tea Co. v Kiernan,* 42 NY2d 236; *Matter of City of Troy v Town of Pittstown,* 306 AD2d 718, 1 NY3d 505; *Matter of Coca-Cola Bottling Co. of N.Y. v Assessor of Town of Geddes,* 241 AD2d 958; *Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon,* 88 NY2d 724.) IV. Michael DeWan's appraisal is fatally flawed for failing to value the

property as managed forest land. (*Matter of Gibson v Gleason,* 20 AD3d 623, 5 NY3d 713.) V. When the Appellate Division reverses the trial court, the Court of Appeals may review the facts to determine which court's determination more closely comports with the evidence. (*Matter of Hime Y.,* 54 NY2d 282; *Glenbriar Co. v Lipsman,* 5 NY3d 388; *W.T. Grant Co. v Srogi,* 52 NY2d 496; *Aviation Constructors, Inc. v Baldassano Architectural Group, P.C.,* 57 AD3d 927; *Zeltser v Sacerdote,* 52 AD3d 824; *Gonzalez v State of New York,* 60 AD3d 1193; *Felt v Olson,* 51 NY2d 977.)

*Peter F. Matera,* West Park, for respondents. I. Petitioners' appraisal was insufficient to prove by a preponderance of the evidence that the subject property was overvalued. (*Matter of Ross v Town of Santa Clara,* 266 AD2d 678; *Matter of City of Troy v Kusala,* 227 AD2d 736; *Matter of Great Atl. & Pac. Tea Co. v Kiernan,* 42 NY2d 236; *Matter of Coca-Cola Bottling Co. of N.Y. v Assessor of Town of Geddes,* 241 AD2d 958; *Niagara Falls Urban Renewal Agency v 123 Falls Realty,* 66 AD2d 1009; *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack,* 92 NY2d 179; *Matter of City of Troy v Town of Pittstown,* 306 AD2d 718; *Matter of Adirondack Mtn. Reserve v Board of Assessors of Town of N. Hudson,* 99 AD2d 600; *Matter of Stillwell Equip. Corp. v Assessors for Town of Greenburgh,* 251 AD2d 672; *Matter of Addis Co. v Srogi,* 79 AD2d 856.) II. Respondents' appraisal is fully supported by the facts and law. (*Matter of Ross v Town of Santa Clara,* 266 AD2d 678; *Matter of City of Troy v Kusala,* 227 AD2d 736.) III. There is no authority that provides for a special method of assessment for classification 912 property and the subject property should be appraised as vacant land. (*Matter of Honeoye Cent. School Dist. v Berle,* 72 AD2d 25; *Matter of Aldrich v Murphy,* 42 AD2d 385; *Matter of Addis Co. v Srogi,* 79 AD2d 856; *Matter of General Elec. Co. v Macejka,* 117 AD2d 896; *Matter of General Motors Corp. Cent. Foundry Div. v Assessor of Town of Massena,* 146 AD2d 851; *Matter of PCK Dev. Co., LLC v Assessor of Town of Ulster,* 20 AD3d 660; *Matter of Stillwell Equip. Corp. v Assessors for Town of Greenburgh,* 251 AD2d 672; *Matter of Ross v Town of Santa Clara,* 266 AD2d 678; *Matter of Adirondack Mtn. Reserve v Board of Assessors of Town of N. Hudson,* 99 AD2d 600; *Matter of Metropolitan Life Ins. Co. v Tax Commn. of City of N.Y.,* 85 AD2d 525.) IV. Petitioners' reliance on the legislative intent in regard to RPTL 480-a is misplaced. (*Matter of Honeoye Cent. School Dist. v Berle,* 72 AD2d 25; *People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

This appeal concerns whether land certified by the Department of Environmental Conservation (DEC) as managed forest land under Real Property Tax Law § 480-a is to be assessed as vacant land or as forest land.

Taxpayer petitioners commenced tax review proceedings against the Town of Esopus, its Assessor, and its Board of Assessment Review (collectively, the Town) to challenge the taxable assessed value of their land on the assessment rolls for the years 2002 through 2005. The Town argues that the land at issue should be deemed vacant land, a determination that would allow the land to be assessed for tax purposes based on its present potential for development, its "highest and best" use. The taxpayer petitioners, pointing out that the land has been certified as managed forest land by the DEC pursuant to the Real Property Tax Law every year since 1978, argue that the land, like any other parcel of land being put to a particular use, must be assessed for tax purposes based on its current use (RPTL 302 [1]).

The Appellate Division, with two Justices dissenting, ruled in the Town's favor (59 AD3d 896 [3d Dept 2009]). We granted the petitioner taxpayers leave to appeal (13 NY3d 703 [2009]) and now reverse. We agree with petitioners and conclude that forest land certified as such by the DEC under RPTL 480-a is used, for real property tax assessment purposes, as forest land and must be assessed based on that use (RPTL 302 [1]).

Petitioners own approximately 108 acres of land situated along the Hudson River in the Town. Beginning in 1978 and annually since then, the DEC has certified approximately 104 of petitioners' 108 acres as "forest land" pursuant to RPTL 480-a. Under the RPTL, "forest land" is defined as "land exclusively devoted to and suitable for forest crop production through natural regeneration or through forestation and shall be stocked with a stand of forest trees sufficient to produce a merchantable forest crop within thirty years of the time of original certification" (RPTL 480-a [1] [f]). The process of obtaining forest land certification from the DEC is somewhat involved. A property owner must submit, on an annual basis, an application to the DEC that includes a "commitment" that "the owner of a certified eligible tract" will be committed "to continued forest crop production for the next succeeding ten years under an approved

management plan" (RPTL 480-a [1] [b]). An "approved management plan" is a plan approved by the DEC for an "eligible tract" that contains "requirements and standards to ensure the continuing production of a merchantable forest crop selected by the owner" (RPTL 480-a [1] [a] [i]). An "eligible tract" is defined as a "tract of privately owned forest land of at least fifty contiguous acres, exclusive of any portion thereof not devoted to the production of forest crops" (RPTL 480-a [1] [e]).

Once the DEC concludes that a tract is an "eligible tract," it sends a certificate of approval to the owner (RPTL 480-a [2] [a]), and the owner files that certificate with the clerk of the county in which the tract is situated. If the tax assessor is "satisfied that the requirements of this section are met," the assessor "shall approve the application" (RPTL 480-a [3] [b]), though the tax assessor's approval power does not include the authority to second-guess the DEC's certification of a parcel of land as "forest land" (*Matter of Clove Dev. Corp. v Frey*, 63 NY2d 181, 183-184 [1984] [a tax assessor "has no power to make a determination whether property is an 'eligible tract' for forest land tax exemption" because the authority to make that determination has been "committed exclusively" to the DEC by the Legislature]). The owner "shall continue" to receive the tax benefits of forest land certification thereafter "upon receipt by the assessor of a certified commitment" each year, "so long as the certification of the eligible tract shall not be revoked by" the DEC (RPTL 480-a [3] [b]).

The tax savings under RPTL 480-a are significant. An "eligible tract" is exempt from taxation "to the extent of eighty per centum of the assessed valuation" of the land (RPTL 480-a [4] [a]). However, if owners of certified forest land cease to abide by their 10-year "commitment" they are penalized significantly (*see* RPTL 480-a [7]). If the entire parcel certified as forest land is no longer used as such, the tax penalty is

> "computed by multiplying by two and one-half the amount of taxes that would have been levied on the forest land exemption entered on the assessment roll . . . for the current year and any prior years in which such an exemption was granted . . . not to exceed a total of ten years" (RPTL 480-a [7] [d]).

If only a portion of the parcel of certified forest land ceases to be used as such, the penalty "shall be twice the amount determined under" RPTL 480-a (7) (d), though "only that

portion of the tract that was actually converted to a use that precludes management of the land for forest crop production shall be used as the basis for determining the penalty" (RPTL 480-a [7] [e]).

The Legislature sought to enact RPTL 480-a in 1974 in an effort to preserve New York's forest land and to make the management of forest land more economical for property owners (*see* L 1974, ch 814; *Matter of Honeoye Cent. School Dist. v Berle*, 72 AD2d 25, 29-31 [4th Dept 1979], *affd* 51 NY2d 970 [1980]). The Legislature found that "lands presently devoted to growth of forest crops are often assessed at a level which renders continued dedication to such use uneconomical" (L 1974, ch 814, § 1). Because it believed that land "devoted to growth of forest products should be assessed at a level which recognizes this use rather than at a level reflecting devotion of the land to another purpose," the Legislature enacted RPTL 480-a "to provide a means by which present and future forest lands may be protected and enhanced as a viable segment of the state's economy and as an economic and environmental resource of major importance" (*id.*).

The effective date of RPTL 480-a was delayed, however (*see* L 1975, ch 68; L 1976, ch 422), and, between 1974 and 1976, the Legislature amended the statute. The most significant changes relevant to this appeal were that the 1974 version of RPTL 480-a included a detailed assessment scheme that was abandoned in the 1976 version, and the 1974 law did not include the 80% tax exemption provided in the 1976 law (*compare* L 1974, ch 814 *and* L 1976, ch 526). These changes are retained in the statutory scheme that is in effect today.

The Town points to this legislative history and argues that the Legislature's decision to remove the assessment scheme from the 1976 law suggests that the Legislature intended forest land to be assessed not as forest land but as vacant land; that is, land that is unimproved such that it may be assessed for tax purposes based on its "highest and best" use. The Town urges that to consider forest land certified as such under RPTL 480-a as land being used as forest land for tax assessment purposes results in an effective "double dip" benefit for taxpayers that the Legislature did not intend, as the 80% tax exemption will apply to a discounted assessment value if the land is assessed as forest land.

We do not read the legislative history in the manner the Town suggests. The changes to RPTL 480-a between 1974 and 1976

do not reveal an altered purpose in enacting the statute; the purpose of protecting forest land and making the production of timber in New York a more economical enterprise remained the same. The 1974 version of RPTL 480-a, the 1976 version of the statute, and the current version of the law in force today all define "forest land" as land that is "devoted to and suitable for forest crop production" (RPTL 480-a [1] [f]), and it is clear that the Legislature considered land "devoted to" forest crop production to be land that was used for that purpose (L 1974, ch 814, § 1 [the "legislature hereby finds and declares that lands presently *devoted to* growth of forest crops are often assessed at a level which renders continued dedication to *such use* uneconomical" (emphasis added)]). Moreover, forest land is recognized not only by the statute but also by relevant administrative authority as an established category of use, not some sort of taxpayer charade to reduce the assessed value of land. The Office of Real Property Services publishes an Assessor's Manual which has included classification 912 for forest land eligible for RPTL 480-a treatment (*see generally Matter of Gordon v Town of Esopus,* 31 AD3d 981 [3d Dept 2006]).

While it is certainly true that "an exemption statute is to be construed strictly against those arguing for nontaxability," a tax exemption statute's "interpretation should not be so narrow and literal as to defeat its settled purpose" (*People ex rel. Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350, 358 [1960]). In line with the clear legislative purpose in enacting RPTL 480-a, we conclude that land certified by the DEC as forest land pursuant to RPTL 480-a is used as forest land and must be assessed under RPTL 302 (1) as such for real property tax purposes.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.

SMITH, J. (dissenting). The majority opinion contains a concise and fair summary of the argument I find dispositive in this case:

> "The Town points to this legislative history and argues that the Legislature's decision to remove the assessment scheme from the 1976 law suggests that the Legislature intended forest land to be assessed not as forest land but as vacant land; that is, land that is unimproved such that it may be assessed for

> tax purposes based on its 'highest and best' use. The Town urges that to consider forest land certified as such under RPTL 480-a as land being used as forest land for tax assessment purposes results in an effective 'double dip' benefit for taxpayers that the Legislature did not intend, as the 80% tax exemption will apply to a discounted assessment value if the land is assessed as forest land." (Majority op at 89.)

This argument does not persuade the majority, but it does persuade me.

I acknowledge that if we simply apply general valuation principles to this land—without considering the specific problem to which the Legislature was responding in RPTL 480-a, and the nature of the response it eventually chose—it should be valued as forest land, not vacant land. As a general rule, the purpose of valuation is to determine the fair market value of the property—what a willing buyer would pay a willing seller (*see* New York State Office of Real Property Services, Uniform Assessment Standards 1.3 ["Value means market value—the price a willing buyer would pay a willing seller in an arm's-length transaction"]). Here, the fair market value is obviously impaired by the fact that petitioners have committed themselves to use the property as forest land, and could not escape that commitment without a significant tax penalty. Thus, in principle, petitioners' appraiser was correct in saying that only sales of property subject to a similar impairment should count as "comparable" for valuation purposes.

But the picture changes when we examine the history of the statute. It seems that, in 1974, the Legislature was troubled by the practice of taxing authorities in doing essentially what the Town of Esopus proposes to do here—valuing forest land as if it were vacant land, thus producing a relatively high value. The legislation that enacted the original version of RPTL 480-a contained a section entitled "Legislative findings and declaration of purpose," which said:

> "The legislature hereby finds and declares that lands presently devoted to growth of forest crops are often assessed at a level which renders continued dedication to such use uneconomical . . . [U]se of land for timber production is becoming increasingly economically unfeasible due to assessment practices

which do not take into account the present use of the property being assessed. Lands devoted to growth of forest products should be assessed at a level which recognizes this use rather than at a level reflecting devotion of the land to another purpose." (L 1974, ch 814, § 1.)

Thus the Legislature's purpose in 1974 was to require a valuation approach similar to the one now required by the majority opinion—valuing the land as forest land, not vacant land. The 1974 version of RPTL 480-a goes on for some pages to prescribe a rather complicated valuation procedure for lands certified as forest lands. Perhaps it was too complicated; in any event, as the majority mentions (majority op at 89), the Legislature repeatedly postponed the effective date of the 1974 legislation, and then took a very different approach in 1976: It threw out all the detailed provisions for valuing forest land, and simply gave forest land an 80% tax exemption, reflected in today's version of RPTL 480-a.

It seems obvious that the 1976 Legislature *substituted* the 80% exemption for what it had, in 1974, considered a fairer assessment procedure. But that substitution does not make sense unless the Legislature assumed that the valuations, before being reduced by the statutory exemption, would be the higher ones that made the Legislature act in the first place. If the Legislature expected forest land to be valued at the lower levels consistent with a restriction of land to forest use, why not base the tax on the whole of the lower value? Why tax only one fifth of it?

Finding no answer to this question, I conclude that the legislative purpose is best served by allowing the Town to value the land as if it were vacant, and then to divide the resulting valuation by five. To divide the lower value by five is effectively to give the taxpayers twice what the Legislature intended to give them only once.

Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH dissents in a separate opinion.

Order reversed, etc.