■ In the Matter of ISLAND WASTE SERVICES, LTD., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [909 NYS2d 790]—

Mercure, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales tax assessment imposed under Tax Law article 28.

At all relevant times, petitioner operated a waste transfer station in Suffolk County, at which it sorted and condensed municipal solid waste and construction debris that had been collected from its customers or delivered by other trash removal companies. Petitioner was assessed sales tax totaling approximately $2.5 million plus interest on payments made to third-party truckers from March 1997 to November 2005 for shipping waste material from its transfer station. The waste was taken to landfills and burn centers, generally located out of state, for ultimate disposal. Petitioner challenged the assessments and, following a hearing, an administrative law judge granted the petitions and canceled the assessments. Thereafter, respondent Tax Appeals Tribunal reversed. Petitioner then commenced this CPLR article 78 proceeding seeking review of the Tribunal's determination, and we now confirm.[1]

Tax Law § 1105 (c) (5) imposes a sales tax on certain services, including "[m]aintaining, servicing or repairing real property, property or land . . . as distinguished from adding to or improving such real property, property or land, by a capital improvement." Although the statute was amended effective December 1, 2005 to exempt "services of removal of waste material from a facility regulated as a transfer station . . . by the department of environmental conservation, provided that the waste material to be removed was not generated by the facility" (L 2005, ch 321, § 1), petitioner concedes that the exclusion was not applicable during the time period at issue. The relevant regulation defines "[m]aintaining, servicing and repairing" as "all activities that relate to keeping real property in a condition of fitness, efficiency, readiness or safety or restoring it to such condition. Among the services included are . . . trash and garbage removal" (20 NYCRR 527.7 [a] [1]).

Petitioner argues that the removal of the waste processed at its facility should not be taxed because the waste was not merely incidental to its use of the property. That is, petitioner contends that it is akin to a manufacturer or processor whose principal function is to process raw materials—waste—into a form for shipment. Thus, petitioner maintains, the service performed by the third-party truckers in shipping its product to landfills or burn centers is not rationally comparable to the incidental dis-

---

1. Seventeen other taxpayers with similar assessments agreed by stipulation to be bound by the outcome in this proceeding.

posal of trash or garbage generated by its facility. Rather, petitioner asserts, the applicable regulation here is 20 NYCRR 526.5 (g) (3), which provides, in relevant part, that "transportation and delivery are not themselves services subject to tax." We disagree.

It is well settled that "an agency's interpretation of the statutes it administers must be upheld absent demonstrated irrationality or unreasonableness" (*Lorillard Tobacco Co. v Roth*, 99 NY2d 316, 322 [2003] [internal quotation marks omitted]; *see Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597, 604 [2005]). "While as a general rule courts will not defer to administrative agencies in matters of pure statutory interpretation, deference is appropriate where the question is one of specific application of a broad statutory term" by the agency charged with administering the statute (*Matter of O'Brien v Spitzer*, 7 NY3d 239, 242 [2006] [internal quotation marks and citations omitted]; *see Lorillard Tobacco Co. v Roth*, 99 NY2d at 322-323; *Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393, 400 [1984]). According deference to the interpretation of Tax Law § 1105 (c) (3) by respondent Commissioner of Taxation and Finance, we conclude that he rationally determined that the services provided by third-party truckers constituted maintenance services within the meaning of the statute as it existed prior to the 2005 amendment.

As the Court of Appeals has noted, both the statute and regulation contain broad language (*see Matter of Rochester Gas & Elec. Corp. v New York State Tax Commn.*, 71 NY2d 931, 934 [1988]; *Matter of Cecos Intl. v State Tax Commn.*, 71 NY2d 934, 936 [1988]). Moreover, both the Court of Appeals and this Court have held that the removal and transportation of waste— including hazardous waste and industrial waste—to a disposal facility constitutes a taxable maintenance service (*see Matter of Rochester Gas & Elec. Corp. v New York State Tax Commn.*, 71 NY2d at 933-934; *Matter of Cecos Intl. v State Tax Commn.*, 71 NY2d at 936; *Matter of Tonawanda Tank Transp. Serv. v Tax Appeals Trib. of State of N.Y.*, 168 AD2d 748, 749-750 [1990]; *see also Island Recycling Corp. v New York State Dept. of Taxation & Fin.*, 34 AD3d 739 [2006], *appeal dismissed and lv denied* 8 NY3d 956 [2007]). The Court of Appeals explained that the removal of such waste "to landfills is neither the transportation of a useful product from one location to another, nor an integral step in the erection of a capital improvement" under Tax Law § 1105 (c) (3) (*Matter of Rochester Gas & Elec. Corp. v New York State Tax Commn.*, 71 NY2d at 934). In rejecting the argument that "property must be abandoned by its owner before it can be

considered trash" (*Matter of Tonawanda Tank Transp. Serv. v Tax Appeals Trib. of State of N.Y.*, 168 AD2d at 749), this Court further explained that "removing hazardous waste is necessary to maintain real property and transportation of the waste is an integral part of the removal process" (*id.* at 750).

Similarly here, as the Tribunal explained in its determination, petitioner was required to remove trash from its property in order to make room for new deliveries of waste. Indeed, the amount of waste that could be stored at the property and the length of time that it could remain there were limited by the Department of Environmental Conservation permits pursuant to which petitioner operated. Kevin Walton, who was employed as a district manager for petitioner's parent company, testified that waste was constantly moving through the facility and, if the transfer station became filled to capacity because waste could not be moved, petitioner was required to shut down the facility. Under these circumstances, we cannot conclude that the Commissioner acted irrationally in determining that the removal of waste by third-party truckers was taxable as a maintenance service, i.e., an "activit[y] that relate[d] to keeping [petitioner's] real property in a condition of fitness, efficiency, readiness or safety" (20 NYCRR 527.7 [a] [1]).[2]

Malone Jr., McCarthy, Garry and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

**2.** This interpretation is consistent with a 1997 advisory opinion of the Commissioner opining that the removal of trash from a transfer station is a taxable maintenance service (*see* NY St Dept of Taxation & Fin Advisory Op No. TSB-A-97[32]S). Although the sponsors of the 2005 amendment characterized the 1997 opinion as a "strained interpretation" of Tax Law § 1105 (c) (3) (*see* Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 321, at 3-4; Assembly Mem in Support, Bill Jacket, L 2005, ch 321, at 5-6), neither the Legislature itself nor its individual members have the "power to declare, retroactively, that an existing statute shall receive a given construction" (*Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293, 304 [1961]).