[957 NYS2d 427]

In the Matter of ELMER W. DAVIS, INC., Petitioner, v COMMISSIONER OF TAXATION AND FINANCE et al., Respondents.

Third Department, December 27, 2012

### APPEARANCES OF COUNSEL

*Harris Beach, PLLC*, Pittsford (*A. Vincent Buzard* of counsel), for petitioner.

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Arnold* of counsel), for Commissioner of Taxation and Finance, respondent.

### OPINION OF THE COURT

Mercure, J.P.

This proceeding requires that we determine whether an industrial development agency may grant financial assistance, in the form of a sales tax exemption on movable equipment, to a business that uses its equipment on jobs or to make deliveries outside the municipality for whose benefit the agency was created. Respondent Tax Appeals Tribunal determined that equipment used outside the agency's jurisdiction may not be exempted from sales tax because agencies are permitted to extend financial assistance only with respect to "projects," and such equipment does not come within the definition of "project" that is set forth in General Municipal Law § 854 (4). Inasmuch as we conclude that the Tribunal's construction of the term "project" is contrary to the purpose and language of the statute, we now annul.

Petitioner is a roofing company with a facility located in the City of Rochester, Monroe County. In June 2005, the County of Monroe Industrial Development Agency (hereinafter COMIDA) appointed petitioner as its agent in a project to renovate and equip petitioner's facility. In connection with equipping the facility, petitioner purchased several trucks, along with a forklift, predator spray equipment, a compressor, computer equipment, telephone upgrades, and a security system. It is undisputed that

the trucks were driven to and used for various roofing jobs both within and outside of Monroe County.

Following an audit, the Division of Taxation concluded that vehicles capable of leaving COMIDA's jurisdiction—i.e., Monroe County—were taxable, and assessed petitioner with a deficiency of approximately $20,000 based upon the failure to pay sales tax on the trucks. An Administrative Law Judge sustained the notice of determination and demand for payment of sales and use taxes, and the Tribunal affirmed. As in *Matter of American Rock Salt Co., LLC v Commissioner of Taxation & Fin. of the State of N.Y.* (104 AD3d 12 [2012] [decided herewith]), the Tribunal concluded that petitioner failed to show that the trucks—or "rolling stock"—were an integral part of the project, or that the use of the trucks outside of Monroe County was upon prior consent of the other municipalities[1] in which petitioner performed roofing jobs. Petitioner then commenced this proceeding challenging the Tribunal's determination.

The Industrial Development Agency Act (*see* General Municipal Law art 18-A) provides for the creation of a local industrial development agency, such as COMIDA, for the purpose of promoting economic welfare, attracting economically sound industry, and "preventing unemployment and economic deterioration" (General Municipal Law § 852; *see* Governor's Mem, 1969 McKinney's Session Laws of NY at 2572). The statute directs that an agency is to achieve this goal by developing and improving specified types of facilities: "[t]he purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing [of] industrial, manufacturing, warehousing, commercial, research and recreation facilities" (General Municipal Law § 858). An agency is considered to be performing a governmental function and, thus, is not required to pay taxes on "any of the property acquired by it or under its jurisdiction or control or supervision or upon its activities" (General Municipal Law § 874 [1]). Further, it is empowered "[t]o acquire, construct, reconstruct, lease, improve, maintain, equip or furnish one or more *projects*" (General Municipal Law § 858 [10] [emphasis added]), and to provide "financial assistance," including tax exemptions, to "private developers," such as petitioner, "who act as the agency's agent for *project pur-*

---

1. In this context, "municipality" means "any county, city, village, town or Indian reservation in the state" (General Municipal Law § 854 [3]).

poses" (*Matter of Fagliarone, Grimaldi & Assoc. v Tax Appeals Trib.*, 167 AD2d 767, 768 [1990] [emphasis added]; *accord Matter of Regeneron Pharms., Inc. v McCarthy*, 77 AD3d 1246, 1247 [2010], *lv denied* 16 NY3d 704 [2011]; *see* General Municipal Law § 854 [14]).

Petitioner's entitlement to a sales tax exemption on the vehicles at issue turns on whether those vehicles were part of a COMIDA-sponsored "project" within the meaning of the statute, because—as respondent Commissioner of Taxation and Finance correctly points out—COMIDA is authorized to provide financial assistance only in connection with "projects." That term is defined in detail as:

> "any land, any building or other improvement, and all real and personal properties located within the state of New York and within or outside or partially within and partially outside the municipality for whose benefit the agency was created, including, but not limited to, machinery, equipment and other facilities deemed necessary or desirable in connection therewith, or incidental thereto . . . which shall be suitable for manufacturing, warehousing, research, commercial or industrial purposes or other economically sound purposes . . . provided, however, no agency shall use its funds in respect of any project wholly or partially outside the municipality for whose benefit the agency was created without the prior consent thereto by the governing body or bodies of all the other municipalities in which a part or parts of the project is, or is to be, located" (General Municipal Law § 854 [4]).

We reject the Commissioner's assertion that the Tribunal's interpretation of General Municipal Law § 854 (4) is entitled to deference; the question before us does not involve the application of a broad statutory term, as the Commissioner argues; it involves the interpretation of a detailed definition in a statute outside the Tax Law (*cf. Matter of Island Waste Servs., Ltd. v Tax Appeals Trib. of the State of N.Y.*, 77 AD3d 1080, 1082 [2010], *lv denied* 16 NY3d 712 [2011]). As such, the question before us is " 'one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent' " (*Wegmans Food Mkts. v Department of Taxation & Fin. of State of N.Y.*, 126 Misc 2d 144, 152 [1984], *affd on mem below* 115 AD2d 962 [1985], *lv denied* 67 NY2d 606 [1986], quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

The parties are in agreement that the critical question is whether the Tribunal properly determined that the vehicles could not, by definition, be part of the project because petitioner *used* them on roofing jobs outside of Monroe County, COMIDA's jurisdiction, without the prior consent of the other municipalities.[2] We conclude that, as petitioner asserts, the Tribunal's determination is flawed because the Commissioner has read the word "used" into the statute, which speaks in terms of the "location" of a project facility, rather than where its equipment is "used."

Apart from the requirement that a project be "located within the state of New York," the critical language in the statute is the proviso at the end of General Municipal Law § 854 (4), prohibiting the use of agency funds for "any project wholly or partially outside the municipality for whose benefit the agency was created without the prior consent thereto by the governing . . . bodies of all the other municipalities in which a part or parts of the project is, or is to be, *located*" (General Municipal Law § 854 [4] [emphasis added]). That proviso was added as a safeguard in a 1973 amendment clarifying that projects could be located partially within and partially outside an agency's jurisdiction. The purpose of the amendment was evidently to expressly authorize multimunicipality projects in order to permit agencies to obtain consolidated financing, with a lower interest rate and lower financing costs, for project facilities that are located in several parts of the state, subject to the approval of the other local governments involved (*see* Senate Introducer Mem in Support, Bill Jacket, L 1973, ch 353 at 3).

We agree with the Tribunal's decision insofar as it concluded that General Municipal Law article 18-A, taken in its entirety,

---

**2.** Although the Commissioner expressly declines to concede that the vehicles would be considered directly related to the project, or "necessary or desirable in connection therewith, or incidental thereto" (General Municipal Law § 854 [4]) if they were used only inside Monroe County, he asserts that the Tribunal's conclusion that the vehicles were not an "integral part" of the project was simply another way of explaining that the vehicles were ineligible because they were used outside Monroe County without the consent of the other jurisdictions. In our view, regardless of whether the statutory test requires that the vehicles be directly related or integral, or—as the statute provides—"necessary," "desirable" or "incidental," the vehicles meet the statutory requirement inasmuch as the project would not be viable without them; petitioner could not continue to operate as a roofing contractor if it did not transport its roofing supplies and employees to job sites (*see Matter of American Rock Salt Co., LLC v Commissioner of Taxation & Fin. of the State of N.Y.,* 104 AD3d 12, 14-15 [2012] [decided herewith], *supra*).

clearly contemplates and speaks in terms of improvements to project facilities, i.e., real property (*see* General Municipal Law § 858). Consistent with that reading, the Tribunal has determined in other cases that a vehicle is not a "facility" and the purchase of a vehicle, without a designated facility—fixed real property—cannot constitute a "project," but the purchase of a vehicle will qualify as a project if the vehicle is installed or used at a designated facility (*see e.g. Matter of Maven Tech., LLC,* 2011 WL 2180362, *5-6, 2011 NY Tax LEXIS 117, *14-15 [Tax Appeals Trib., May 26, 2011, DTA No. 822709]; *Matter of Midtown Tire, Inc.,* 2011 WL 2180361, *6, 2011 NY Tax LEXIS 116, *16 [Tax Appeals Trib., May 26, 2011, DTA No. 822708]). The Tribunal has emphasized that "an [industrial development agency] must designate real property as a facility because, under the statutory scheme and case law, *the location of the facility becomes the project location for both jurisdictional and tax purposes*" (*Matter of Conking & Calabrese Co., Inc.,* 2011 WL 198443, *4, 2011 NY Tax LEXIS 7, *10 [Tax Appeals Trib., Jan. 13, 2011, DTA Nos. 822727, 822737] [emphasis added]). In addition, it has explained that "*[t]here is no case where the facility and the project location differ* because, necessarily, the project always consists of acquiring, upgrading, furnishing or otherwise improving either real property or a[ ] building upon real property" (2011 WL 198443, *4 n 3, 2011 NY Tax LEXIS 7, *10 n 3 [emphasis added]).

Our disagreement with the Tribunal's determination herein involves its refusal to apply those principles to this case. It is undisputed that petitioner's vehicles were purchased in connection with the renovation and equipping of its existing facility in the City of Rochester. A vehicle comes "within the tax exemption provided by the statute so long as the [agency] owned, controlled or supervised it in connection with its activities, including the equipping and furnishing of a project" (*Wegmans Food Mkts. v Department of Taxation & Fin. of State of N.Y.,* 126 Misc 2d 144, 150 [1984], *supra*). While a project may include movable equipment, the statute does not speak in terms of projects having transitory locations (*see* General Municipal Law § 854 [4]); rather, the statute references the "location" of the designated facility, which is fixed, and that is "the project location for . . . tax purposes," as the Tribunal has ruled in other cases (*Matter of Conking & Calabrese Co., Inc.,* 2011 WL 198443, *4, 2011 NY Tax LEXIS 7, *10 [Tax Appeals Trib. Jan. 13, 2011, DTA Nos. 822727, 822737], *supra*). In contrast here, the Tribunal has

ruled that the project location is the location of the *facility's equipment*, and determined that an agency's financial assistance cannot extend to any equipment that is used on deliveries or jobs outside the agency's jurisdiction. This result is both inconsistent with the Tribunal's prior decisions and unsupported by the language of the statute.

Accordingly, we agree with petitioner that the "location" of the project at issue here was the physical location of its real property, the facility in the City of Rochester. That location was not altered by the temporary absence of movable equipment when it was used in connection with roofing jobs, whether inside or outside of Monroe County, and consent was required only if petitioner acquired additional real property outside of COMIDA's jurisdiction. That is, the consent requirement applies to real estate upon which a project facility is to be located, and not to the movable vehicles acquired in equipping the facility. The Tribunal's attempt in its decision to distinguish between use of the vehicles, while outside of the County but related to roofing jobs within the County, as opposed to use related to roofing jobs outside the County, is without basis in the statute. As petitioner notes, there is no provision in the General Municipal Law that prohibits the temporary removal of mobile project machinery and equipment from the geographic boundaries of an agency, and no indication that consent is required each time such equipment is moved.

The Commissioner argues that the consent requirement recognizes the interest of other municipalities in whether a roofing business from Monroe County should receive a sales tax subsidy from COMIDA to come into their jurisdictions and compete against local roofers, who may not have been similarly subsidized. The Commissioner maintains that the consent requirement was intended to level the playing field for tax purposes so that all businesses may compete in these other municipalities on equal terms. Although the statute does contain a provision that concerns preventing intrastate competition between municipalities for project facilities or "economic raiding within the State" (*Matter of Main Seneca Corp. v Town of Amherst Indus. Dev. Agency*, 100 NY2d 246, 251 [2003] [internal quotation marks and citations omitted]), that provision is focused on the prevention of the relocation of "industrial or manufacturing *plant[s]* . . . from one area of the state to another area of the state or in the abandonment of one or more *plants or facilities* . . . located within the state" (General Municipal Law § 862

[emphasis added]). That is, the anticompetitive concerns of the statute, as with General Municipal Law article 18-A as a whole, are focused on real property—preventing the removal or abandonment of plants or facilities—not with the temporary use of project equipment outside an agency's jurisdiction. The Commissioner's reading of the consent requirement in General Municipal Law § 854 (4) as focused on project equipment, as opposed to the project facility, essentially acts to deny a significant portion of otherwise authorized financial assistance to any business that continues to perform work or use project vehicles to make deliveries to customers outside of an agency's jurisdiction, whether inside or outside the state (*see e.g. Matter of American Rock Salt Co., LLC v Commissioner of Taxation & Fin. of the State of N.Y.*, 104 AD3d 12 [2012] [decided herewith], *supra*; *Matter of American Fruit & Vegetable Co.*, 2011 WL 3561181, *2-3, 2011 NY Tax LEXIS 167, *7-8 [Tax Appeals Trib., Aug. 4, 2011, DTA 822631]; *Matter of OM P. Popli, P.E., L.S., P.C.*, 2011 WL 3561178, *2-3, 2011 NY Tax LEXIS 166, *6-7 [Tax Appeals Trib., Aug. 4, 2011, DTA 822622]).

Such a result—requiring established private developers to restrict their future customer base to only those business opportunities that are within an agency's geographic location, or risk forgoing otherwise available financial assistance—is inconsistent with the statute's purpose of promoting economic welfare and economically sound commerce and projects, and preventing unemployment and economic deterioration (*see* General Municipal Law § 852). "While it is certainly true that an exemption statute is to be construed strictly against those arguing for nontaxability, a tax exemption statute's interpretation should not be so narrow and literal as to defeat its settled purpose" (*Matter of Gordon v Town of Esopus*, 15 NY3d 84, 90 [2010] [internal quotation marks and citation omitted]). Inasmuch as the Tribunal's interpretation of General Municipal Law § 854 (4) is so narrow and literal as to hamper the statutory goal of fostering economic development, as well as inconsistent with the statutory scheme and the Tribunal's prior decisions, it must be annulled.

LAHTINEN, MALONE JR., STEIN and GARRY, JJ., concur.

Adjudged that the determination is annulled, without costs, petition granted, and matter remitted to respondent Commissioner of Taxation and Finance for further proceedings not inconsistent with this Court's decision.