*13 OPINION OF THE COURT
Lahtinen, J.
Petitioner operates a salt mine in Livingston County under an arrangement with the Livingston County Industrial Development Agency (hereinafter LCIDA). Pursuant to a sales tax exemption letter issued by LCIDA, petitioner leased 600 rail-cars, which were garaged in Livingston County and used exclusively to transport its product from the mine to various locations throughout the United States. The Department of Taxation and Finance determined that petitioner should pay sales and use tax on its acquisition of the railcars.[1] Petitioner asserted that, as an agent of LCIDA, it was exempt from such tax. Petitioner’s administrative challenge culminated in respondent Tax Appeals Tribunal holding that petitioner was not entitled to an exemption from sales and use tax for the railcars. The Tribunal determined that petitioner had failed to show that the railcars were an integral part of the project. The Tribunal further held that petitioner was not entitled to the exemption because the railcars were used beyond LCIDA’s jurisdiction of Livingston County and, under the Tribunal’s interpretation of General Municipal Law § 854 (4), the prior consent of all municipalities[2] outside of Livingston County that the rail-cars passed through was necessary for the exemption. This proceeding ensued.
“It is well established that [the] taxpayer bears the burden of proving any exemption from taxation” (Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d 1058, 1060 [2012] [citation omitted]). “While it is certainly true that ‘an exemption statute is to be construed strictly against those arguing for nontaxability,’ a tax exemption statute’s ‘interpretation should not be so narrow and literal as to defeat its settled purpose’ ” (Matter of Gordon v Town of Esopus, 15 NY3d 84, 90 [2010], quoting People ex rel. Watchtower Bible & Tract Socy. v Haring, 8 NY2d 350, 358 [1960]). Discerning a statute’s purpose and intent begins with its language; “ [nevertheless, the legislative history of an enactment may also be relevant and is not to be ignored” (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]).
*14 The purposes of the Industrial Development Agency Act (see General Municipal Law art 18-A) include “to promote economic welfare and attract economically sound investment and industry” (Chemical Bank v Meltzer, 93 NY2d 296, 299 n 1 [1999]; see General Municipal Law § 852). An industrial development agency (hereinafter IDA) is thus created “for the purpose of preventing unemployment and economic deterioration” (General Municipal Law § 852; see Matter of Main Seneca Corp. v Town of Amherst Indus. Dev. Agency, 100 NY2d 246, 249 [2003]) and to “provide one means for communities to attract new industry, encourage plant modernization and create new job opportunities” (Governor’s Mem, 1969 McKinney’s Session Laws of NY at 2572). To facilitate achieving these overriding goals, private developers, such as petitioner, who act as the agents of an IDA “for project purposes,” may receive the same exemption from taxation as the IDA (Matter of Fagliarone, Grimaldi & Assoc. v Tax Appeals Trib., 167 AD2d 767, 768 [1990]; see General Municipal Law § 874 [1]; Matter of Regeneron Pharms., Inc. v McCarthy, 77 AD3d 1246, 1247 [2010], lv denied 16 NY3d 704 [2011]). The definition of the term “project,” which is key in the current dispute, is set forth in General Municipal Law § 854 (4). Since a detailed definition of “project” is set forth in the statute outside the Tax Law, construing the meaning of that specific word involves “pure statutory interpretation and analysis, determinable only on accurate apprehension of legislative expression and intent” (Matter of 1605 Book Ctr. v Tax Appeals Trib. of State of N.Y., 83 NY2d 240, 244 [1994], cert denied 513 US 811 [1994]; see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; Matter of Elmer W. Davis, Inc. v Commissioner of Taxation & Fin., 104 AD3d 50, 53 [2012] [decided herewith]).
We consider first the Tribunal’s determination that petitioner failed to establish that the railcars were an integral part of the project. The definition of project is broad enough to include rail-cars, as it provides, in part, that “project”
“shall mean any land, any building or other improvement, and all real and personal properties located within the state of New York and within or outside or partially within and partially outside the municipality for whose benefit the agency was created, including, but not limited to, machinery, equipment and other facilities deemed necessary or desirable in connection therewith, or incidental thereto, *15 whether or not now in existence or under construction, which shall be suitable for manufacturing, warehousing, research, commercial or industrial purposes or other economically sound purposes” (General Municipal Law § 854 [4]).
Consistent with the goal of promoting and assisting this economically significant project, LCIDA addressed the need for railcars, authorized the use thereof for the project, and issued a sales tax exemption letter specifically with respect thereto. For the mining project to go forward and have viability, an integral part thereof was moving the salt from where it was mined to markets. Simply put, the railcars were integral to the project and the Tribunal’s determination to the contrary[3] was arbitrary and erroneous.
Next, we turn to whether petitioner lost the exemption because prior consent was not obtained for the exemption from all municipalities through which the railcars passed outside of Livingston County. The definition of “project” in General Municipal Law § 854 (4) continues to be relevant to this issue as follows:
“provided, however, no agency shall use its funds in respect of any project wholly or partially outside the municipality for whose benefit the agency was created without the prior consent thereto by the governing body or bodies of all the other municipalities in which a part or parts of the project is, or is to be, located.”
This language was added to the statute in 1973 together with the language earlier in the same paragraph allowing locations “within or outside or partially within and partially outside the municipality for whose benefit the agency was created” (L 1973, ch 353).
The original 1969 Industrial Development Agency Act had not specifically addressed geographical limits (see Senate Introducer Mem in Support, Bill Jacket, L 1973, ch 353 at 3; see also L 1969, ch 1030), and the 1973 amendment explicitly authorized multimunicipality projects, but included the consent requirement to ensure that one municipality’s project did not intrude on or adversely affect another municipality (Letter in Support by the Association of Towns, Bill Jacket, L 1973, ch *16 353).[4] This concern was consistent with the tension between adverse intrastate interests recognized since the inception of the Industrial Development Agency Act, which had included an “anti-pirating provision to prevent economic raiding within the State” (Governor’s Mem, 1969 McKinney’s Session Laws of NY at 2572; see General Municipal Law § 862; Matter of Main Seneca Corp. v Town of Amherst Indus. Dev. Agency, 100 NY2d at 250-251).
The underlying concerns for requiring the consent of other municipalities are not implicated here, inasmuch as the project facility, the salt mine, was located in a single municipality. The railcars, a necessary component of the project, do not intrude on, or otherwise adversely affect the interests of, municipalities outside of Livingston County through which the railcars happen to roll. The Tribunal’s interpretation and application of this provision of the General Municipal Law to petitioner erodes the statute’s overriding goal of fostering economic development while not advancing in any discernible way the concerns that gave rise to the consent requirement (see Matter of Elmer W Davis, Inc. v Commissioner of Taxation & Fin., 104 AD3d 50, 57 [2012] [decided herewith]).
The remaining issues are academic.
Mercure, J.E, Malone Jr., Stein and Garry, JJ, concur.
Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent Commissioner of Taxation and Finance for further proceedings not inconsistent with this Court’s decision.

. Initially calculated in excess of $687,000, the amount was subsequently adjusted to about $451,500.

. “Municipality” is defined for purposes of the Industrial Development Agency Act as “any county, city, village, town or Indian reservation in the state” (General Municipal Law § 854 [3]).

. It appears that the Tribunal reached this issue despite the fact that neither party contested the Administrative Law Judge’s finding that the railcars were integral to the project.

. The legislative history reveals that the specific goal at hand in 1973 was to allow one IDA to issue its bonds covering the financing of pollution control facilities where a company facing pollution control abatement orders operated in several counties, and allowing consolidated financing that would reduce costs (see Senate Introducer Mem in Support, Bill Jacket, L 1973, ch 353 at 3).